## STERMAN *a*. KENNEDY.

*Supreme Court, First District; At Chambers, November*, 1862.

AUCTIONEER.—DUTIES OF POLICEMEN.—INJUNCTION.

An injunction will not be granted to restrain police officers from exercising supervision over citizens within the sphere of their duty as peace officers, although such supervision is exercised in an arbitrary and unlawful manner. The remedy is by action for damages, or by a criminal prosecution.

Motion to dissolve an injunction.

This action was brought by Jacob Sterman against John A. Kennedy, Morris De Camp, and Russell Wells, to obtain an injunction. The plaintiff was a duly licensed auctioneer, carrying on his business at No. 153 Broadway, and had been doing a large and prosperous business, his annual expenses exceeding $5000. On July 9th, 1862, Wells, one of the defendants, a policeman, stationed himself in front of plaintiff's store, and was there every day, and nearly all day, pointing out plaintiff's establishment to the public as a "Peter Funk" or mock-auction concern, in which they would have their pockets picked, or be robbed, stating that its occupants were thieves; and as plaintiff passed in or out of his store, Wells would call attention to him, saying, "There goes a thief—a boss Peter Funk." This greatly injured, and was calculated to destroy, plaintiff's business. The complaint alleged that Wells acted under the authority of Morris De Camp, captain of the Metropolitan Police, and John A. Kennedy, superintendent, all of whom were alleged to be pecuniarily unable to respond for their acts in damages. It was also alleged that the defendants avowed the intention to continue the course above described, wherefore plaintiff prayed for an injunction and other relief.

To this complaint were annexed the affidavits of six persons verifying the complaint, showing how large crowds were collected around the plaintiff's store by the conduct of the defendants, and his business entirely prevented. In one affidavit was

contained a respectful letter from Mr. Whitehead, attorney for the plaintiff, to Kennedy, which Kennedy did not in any way notice. A temporary order for injunction was made by Mr. Justice Barnard, which the defendants now moved to dissolve.

The defendants Kennedy and Wells put in answers, De Camp not having been served. They set up on information and belief, that the plaintiff's establishment was a mock-auction shop, the sales in which were confined to watches and jewelry, and they set up that all they did was in their official capacity to warn strangers against the frauds practised in mock-auction establishments. It was also alleged that the plaintiff did not give public notice in the newspapers of any sale designed to be made on either of the days when any of the acts were done of which the plaintiff complained. The answer was not supported by affidavit.

*Brown, Hall & Vanderpoel,* for the motion.—I. The complaint is substantially for slander, and on its face it is apparent the plaintiff's damages, if defendants have done wrong, are recoverable in an action at law. If so, then it is elementary law that the *equitable* arm of the law should not raise to aid the plaintiff.

II. To grant or continue an injunction upon the complaint, would be to absolutely bar the police from interference with plaintiff. He might do as he pleased in his store; and the complaint fails to show certainty of right to the plaintiff, and fails to give the court a standard of clearly ascertaining and measuring his rights, which is necessary. (Olmsted *a.* Loomis, 6 *Barb.,* 152.)

III. The difficulties of plaintiff increase under the answer. This shows that the plaintiff is by law under the supervision of the police. 1. Auctioneers like plaintiff come under the general supervision of police. The alleged injury is an act of supervision. It *may* be an illegal one, but that is a question of damage at law. To-morrow the act of supervision may be a legal one. Yet the injunction-order substitutes the discretion of the court for the statutory discretion given the superintendent of police. 2. The pleadings together show that defendants were obeying section 29 of Police Act "to advise and protect travellers and strangers," &c. 3. The statute of 1846, ch. 302, § 8,

is also still in force, but whether or no it be, the recent police directions are more sweeping, and, if you please, arbitrary, in giving discretion to police authorities.

IV. The whole case shows that the exercise of this jurisdiction by injunction leads to collision between the municipal discretion and the judicial. The defendants, without malice, have been exercising a clearly permissible discretion, and the presumptions of law are, that they do their duty. The case of Gilbert *a.* Mickle (4 *Sandf. Ch.*, 357) applies, and there the "nuisance" was tenfold greater than this alleged one. Also, Wood *a.* City of Brooklyn (14 *Barb.*, 433).

*James T. Brady*, opposed.—I. The auction business is lawful, where carried on under license from the proper authority, and no officer or citizen has a right to molest the auctioneer while carrying on such business, merely because he is transacting the same. (2 *Rev. Stat.*, 5 ed., 461, § 18.)

II. The liability of an auctioneer to be interfered with by the police is not different from that of any other citizen engaged in any other kind of business. For any violation of law justifying the officers' interference, he is liable to arrest or prosecution as the law prescribes, and not otherwise. But here no one is produced who ever did, or now can charge plaintiff with any misconduct whatever. On conviction of fraud he would be forever disqualified from being an auctioneer, and made liable to fine and imprisonment. (2 *Rev. Stat.*, 5 ed., 467, § 59.)

III. Even if the plaintiff, in his establishment, were guilty of fraud every day, this would not justify a policeman in arresting or interfering with him unless the fraud amounted to a criminal act; and even then, if it were only a misdemeanor, the officer could not arrest him unless the offence were committed in his presence.

IV. There is no statute which militates against the preceding propositions. 1. By the Police Law of 1846, it was made the duty of the sergeants and policemen " to caution strangers and others, against pickpockets, watch-stuffers, droppers, mock auctioneers, and all other vicious persons." The same provision was in substance contained in the Police Act of 1844. 2. This provision, and the right of a party to be secured in the lawful prosecution of his business, are considered in the case of Gilbert *a.* Mickle

(4 *Sandf. Ch.*, 357). The question there arose on bill and answer only. 3. The Police Laws, 1844, 1846, 1853, and 1857, have taken away the right to interfere with places suspected of being mock-auction shops by any such means as were adopted by Mayor Mickle in the case cited, or by the defendants in this case. The offence of cheating at mock auctions is changed from misdemeanor to felony, and a new tribunal created to investigate such cheats. The duty of the police, therefore, is, when information of such a cheat is given, to have a complaint made, or to arrest the alleged offender and have him dealt with according to law.

V. The Police Acts of 1857 and 1860 remodel the whole police system, sweeping away all statutes relative to the powers and duties of police, so that the police can no longer justify their conduct in this case under the Laws of 1846, before referred to, as was done in the case of Gilbert *a.* Mickle, that statute being repealed.

VI. But we show by our complaint and proofs, and it is not denied, that the plaintiff is not a " mock" but a legal auctioneer duly licensed. The authority to watch and caution, if it exists, is confined to " mock auctions."

VII. As to the jurisdiction of the court to restrain the continuance of a nuisance; that the conduct of the defendants amounted to a nuisance; and that equity will interfere to prevent continuous trespasses, or a " constantly occurring grievance," because it abhors " multiplicity of suits," see 2 *Chitty's Blackstone*, 168, margin; *Story's Eq. Jur.*, § 925, and *notes.*

LEONARD, J.—The defendants are amenable to the criminal laws of the State, and in courts of common-law jurisdiction, for every violation of the plaintiff's rights as an honest citizen, and for all excess of authority exercised by them.

The criminal courts are open to hear complaints and punish police officers, as well as private citizens, for wrongs and injuries committed by them. A police officer cannot shelter himself from punishment as a criminal for breaches of the law, or invasions of private rights, under the cloak of his office or the orders of his superiors.

It is not the province of a court of equity to try criminal questions; that court cannot engage in supervising and regu-

lating the manner in which the police officers perform their duty; nor whether those whom they arrest were really guilty of a crime, and so amenable to the criminal laws.

Were we to assume jurisdiction in this case, it would be our duty, on the issue here joined, to take testimony, if offered by the defendants, to show that the plaintiff was carrying on the business of a mock auctioneer, resorting to the tricks and devices of a Peter Funk, in order to defraud the unwary. Should the charges against the plaintiff prove true, the extraordinary powers of a court of equity will have been invoked to prevent the exercise of legal functions vested in the police to prevent the commission of crime, and the court will thus be made a party in aiding the nefarious traffic of a mock auctioneer.

These are not the proper or customary functions of a court of equity.

If the plaintiff can make a proper case, the criminal tribunals will promptly arrest and deal with the defendants. No injunction, to be granted by this court, can be more effectual in restraining the acts complained of than would be the arrest of the defendants. The grand jury of the county is open every month, and if the complaints of the plaintiff are just, the offenders will be quickly reached by indictment and punishment.

The plaintiff is by no means remediless, even if the defendants are unable to respond in damages in a civil action.

The injunction must be dissolved, with ten dollars costs of the motion to the defendants.