CASE 111—FOR VIOLATING CITY ORDINANCES—MARCH 3.

## Dunn, Etc. v. Commonwealth, use, Etc.

APPEAL FROM BOYD CIRCUIT COURT.

1. MUNICIPALITIES—POLICE POWER—REGULATING PROSTITUTES.—An ordinance enacted by a city of the fourth class, prohibiting prostitutes from being on the streets or alleys of such city between the hours of 7 o'clock p. m., and 4 o'clock a. m., except in instances of reasonable necessity, to be clearly shown by the party charged, is a valid exercise of police power within the authority granted by sec. 3490 of the Kentucky Statutes "to restrain and punish vagrants, prostitutes, rakes and whoremongers."

2. APPEALS—JURISDICTION.—This court has jurisdiction to revise a judgment of the circuit court for a fine of $20, or less, imposed under an ordinance of a city of the fourth class when the legality of such ordinance is denied.

DINKLE & MONTAGUE FOR THE APPELLANTS.

1. The ordinances under which the appellants were punished was invalid. Horr & Bemis on Municipal Ordinances, secs. 84, 131, pp. 70-1-2, 97-8-9; 53 Mo., 580; Mayor v. Winfield, 8 Hump., 707; 54 Tex., 189.

2. This court has jurisdiction of an appeal under sec. 3519 Ky. Stats.

J. A. BURNS FOR THE APPELLEE.
(Brief on the merits withdrawn.)

Dunn, &c., v. Commonwealth, use, &c.

On a motion to dismiss the appeal, same counsel for appellee cited Criminal Code, sec. 347; Broadwell v. Com., 17 Ky. Law Rep., 564.

JUDGE PAYNTER DELIVERED THE OPINION OF THE COURT.

Section 3490, Kentucky Statutes, is part of the act for the government of cities of the fourth class, and as much of it as is pertinent to this inquiry reads as follows:

"The board of council . . . shall have power within the city—(1) To pass ordinances not in conflict with the Constitution or laws of this State or of the United States. . . . (14) . . . To restrain and punish vagrants, prostitutes, rakes and whoremongers." Conceiving it had the power, the board of council of the city of Catlettsburg passed an ordinance which reads as follows, (section 24): "Any prostitute being upon the streets or alleys of the city of Catlettsburg, Kentucky, between the hours of seven o'clock p. m. and four o'clock a. m. following, standard time, except in instances of reasonable necessity, to be clearly shown by the party charged, shall be fined five dollars for each offense."

The appellants are prostitutes, and went upon the streets between the hours of seven o'clock p. m. and four o'clock a. m., without any reasonable necessity therefor. For this offense a warrant was issued for their arrest, and the trial resulted in their conviction, and a fine of five dollars was assessed against each of them. The circuit court sustained the action of the police judge imposing the fine. The question for review is whether the ordinance in question is valid.

A municipality is but an agency of the State, and, whenever it passes an ordinance in the exercise of police power, it is the instrumentality of the State, and does so for the State. The General Assembly has vested the board of

council of the municipality of Catlettsburg with power to "restrain and punish prostitutes." The language used is broad and comprehensive enough to authorize the enactment of the ordinance under consideration. Did the General Assembly have constitutional authority to vest the board of council with the power to enact the ordinance? Under our constitutional system, the ordinary police regulations have been left to the States. All that the Federal Government can do is to see that the States do not, in attempting to exercise the police power, invade the sphere of national sovereignty, obstruct or impede the exercise of any authority which the Constitution has vested in the national government, or deprive a citizen of rights guaranteed to him by the Federal Constitution. It is difficult to define the police power of a State.

In speaking of the police power of the States, Mr. Cooley, in his work on Constitutional Limitations (page 704), says: "The police of a State, in a comprehensive sense, embraces its whole system of internal regulation, by which the State seeks, not only to preserve the public order, and to prevent offenses against the State, but also to establish for the intercourse of citizens with citizens those rules of good manners and good neighborhood which are calculated to prevent a conflict of rights, and to insure to each the uninterrupted enjoyment of his own so far as is reasonably consistent with a like enjoyment of rights by others." Blackstone defines it to be "the due regulation and domestic order of the kingdom, whereby the inhabitants of a State, like members of a well-governed family, are bound to conform their general behavior to the rules of propriety, good neighborhood, and good manners, and to be decent, industrious, and inoffensive in their respective stations." 4 Bl. Comm, 162.

In speaking of the difficulty in defining the extent of police power, in Stone v. Mississippi, 101 U. S., 814, it was said: "Many attempts have been made in this court and elsewhere to define the police power, but never with entire success. It is always easier to determine whether a particular case comes within the general scope of the power than to give an abstract definition of the power itself which will be in all respects accurate."

Courts and law writers have found it difficult to define the extent and boundaries of the police power. It certainly extends to the protection of the lives, health, and property of the citizens, and to the preservation of good order and public morals. Every citizen has the constitutional guaranty of life, liberty, and enjoyment of his property; and they can not be taken from him, except by due process of law. Social and conventional rights, however are subject to such reasonable limitations in their enjoyment as will prevent them from being dangerous and hurtful to the body politic; and the lawmaking department of the government, under the power vested in it by the Consitution, can enact laws providing for such reasonable restraints and regulations as may be necessary and expedient to secure social order and public morals. It is the duty of the State, direct or through such agencies as it may provide, to protect the public health and morals. It has the power by law to declare what shall constitute an offense, and provide a punishment for it within the constitutional limitations. It is certainly within the legislative power to provide for the restriction or suppression of bawdy houses. Our social institutions and public conscience demand that they shall be regulated or suppressed. The unfortunate beings who live in such houses, and pursue their occupation live from their acts of immorality, which are

a violation of social order, and tend to the destruction of public morals. The board of council of a municipality is presumably familiar with their habits and method in the prosecution of their work of shame and degradation. It was known to the board of council that these unfortunate women did nothing for a livelihood except to make merchandise of themselves. The favorite time for their business is between nightfall and the next day's dawn. Their conduct is calculated to bring together disorderly and ill-disposed persons, and likely to result in a breach of the public peace. Therefore the lawmaking department of the municipality declared that they should keep off of the streets and alleys of the city during the hours in which they could most successfully prosecute their immoral work.

We think this is a reasonable restraint, and it does not unreasonably abridge their personal liberty. By the terms of the ordinance, they are allowed to go upon the streets if there is a reasonable necessity for it. During the fifteen hours of the twenty-four, these habitual offenders against the moral, social, and penal laws are permitted to go wherever they please upon the streets and alleys of the city, which affords them ample opportunity for healthful exercise, and of attending to their reasonable wants.

Mr. Cooley, in his work on Constitutional Limitations (page 745), says: "It is sufficient for us to have pointed out that, in addition to the power to punish misdemeanors and felonies, the State has also the authority to make extensive and varied regulations as to the time, mode, and circumstances in and under which parties shall assert, enjoy, or exercise their rights, without coming in conflict with any of those constitutional principles which are estab-

lished for the protection of private rights or private property."

It has been held by courts that, under the police power, municipalities can regulate the height of buildings in cities, prescribe the streets upon which persons driving a certain class of vehicles shall travel, and prohibit them from traveling upon the streets, and regulate the hours at which public places, places of amusement, and saloons shall be closed. The Legislatures of the States can enact laws to regulate the employment of children of certain ages, and prohibit women from engaging in certain kinds of employment. It has been held by some courts that a penalty can be imposed upon livery stable keepers for giving credit to pupils without the consent of the college authorities. It has been held, to protect laborers against oppression of their employers, that it is competent to forbid them being paid anything except legal-tender funds.

Many illustrations of the exercise of police power, which have been sustained by the courts of the country, could be given.

These suggestions are merely to show the extent and comprehensiveness of the police powers of the States, as interpreted by this and other courts of the country.

Our attention has not been called to any case involving the exact question involved in this case. As cases arise in which the police power is attempted to be exercised, we must determine whether or not it has been constitutionally done. Our conclusion is that the Legislature vested the board of council with the power to pass the ordinance, and that in doing so, it did not violate the Constitution of this State or of the United States.

When the court had under consideration the case of

Meader Furniture Co. v. City of Newport, 16 Ky. Law Rep., 827, [30 S. W., 207], its attention was not called to section 3519, Kentucky Statutes, which expressly gives this court jurisdiction or appeals from the judgments of circuit courts where fines of twenty dollars or less are imposed under ordinances the validity of which is questioned. If the court's attention had been called to this section of the statute, it would not have taken the view of the question of the appellant's right to an appeal which it took. The judgment is affirmed.