(101 App. Div. 101)

## HALE v. BURNS.

(Supreme Court, Appellate Division, Second Department. January 27, 1905.)

1. INJUNCTION—CONTINUING TRESPASS.
    An injunction will lie to restrain a continuing trespass.

2. SAME—PUBLIC OFFICERS—TRESPASS IN DISCHARGE OF DUTIES.
    An injunction will lie to restrain public officers from performing acts in the discharge of their duties which come within the nature of trespass, to the irreparable injury of the aggrieved party.

3. SAME—ADEQUATE REMEDY AT LAW.
    Where a police captain, on suspicion that gambling was being conducted in plaintiff's saloon and restaurant, stationed officers therein, to the damage of plaintiff's business, plaintiff was not precluded from an injunction on the ground of an adequate remedy at law.

4. SAME—STATIONING POLICEMEN IN PLACE OF BUSINESS.
    Laws 1896, p. 78, c. 112, § 37, makes saloons public places, and gives police officers the right of inspection; and New York City Charter (Laws 1901, p. 136, c. 466) § 315, obligates police officers to inspect business places having excise licenses and gambling houses, and to restrain all unlawful conduct therein. Const. U. S. Amend. art. 4, guaranties the people security in their houses and against unreasonable searches; and, by Const. N. Y. art. 1, § 6, no one may be deprived of life or property without due process of law. Plaintiff conducted a saloon on the ground floor of a building, having on the second floor a restaurant and a room occupied by a social club; and the police captain of the precinct, suspecting that certain persons who frequented plaintiff's place of business were common gamblers, stationed police officers in the saloon and upstairs, to the damage of plaintiff's business. Plaintiff himself was of good character. *Held*, that an injunction would lie, restraining such espionage.

5. SAME—INJUNCTION—RECITALS.
    A preliminary injunction restraining a police captain from stationing officers in plaintiff's place of business on a mere suspicion that persons frequenting it were gamblers should not recite that defendant acted maliciously and oppressively; oppression being a misdemeanor, under Pen. Code, § 556.

Appeal from Special Term, Kings County.

Suit by Peter Hale against Joseph Burns, individually and as captain of the Second Police Precinct of the police department of the city of New York. From an order (89 N. Y. Supp. 711) granting plaintiff a preliminary injunction restraining the stationing of police officers on plaintiff's premises, defendant appeals. Affirmed.

¶ 1. See Injunction, vol. 27, Cent. Dig. §§ 107, 142.

Argued before HIRSCHBERG, P. J., and BARTLETT, WOOD-WARD, JENKS, and HOOKER, JJ.

James D. Bell, for appellant.

Louis H. Reynolds and Ira Leo Bamberger, for respondent.

HOOKER, J. This is an action against the defendant, Burns, individually and as captain of the Second Police Precinct of the police department of the city of New York, for injunctive relief, decreeing that the defendant be restrained from a continuing trespass on the plaintiff's property. A motion was made at Special Term for a temporary injunction against the defendant, in the tenor of the demand for relief in the complaint, and from an order granting such an injunction pendente lite, the defendant appeals.

The plaintiff is duly licensed to conduct a saloon at No. 193 Washington street, in the borough of Manhattan, city of New York, and had been conducting that business for some time prior to the commencement by the defendant of the unlawful acts of which he complains. The saloon proper occupies the ground floor, and the plaintiff has two rooms on the second floor, which are used in his restaurant business, where, as appears from the affidavits, he has been in the habit of serving meals to both men and women. One of the rooms upstairs is used as a clothesroom for butchers occupied at the Washington Market, opposite the premises of the plaintiff. These butchers are customers of the plaintiff, and rent from him the use of this room. Access to the second floor is gained by means of a stairway at the side of the saloon, and upon the second floor there is a third room, occupied by the Sunny Brook Pleasure Club, which seems to be an incorporated social club. It is undisputed that the plaintiff is not a member of the club, has nothing to do with it, and is not interested, as owner or proprietor or in any other way, with the premises it occupies. Suspecting that gambling was being practiced or would be indulged in by visitors at the club-rooms, the defendant, as captain of police of the precinct, on or about the 1st day of February, 1904, stationed two police officers, in citizens' clothing, on the plaintiff's premises. One took his post in the plaintiff's saloon, and the other upstairs, sometimes within and sometimes without the plaintiff's eating room. They assigned as the reason of their being there that the defendant had directed them to post themselves there for the purpose of preventing gambling on the premises, and, though many times requested by the plaintiff to quit the premises unless they had business to transact, refused to go. Officers were kept there daily from noon until about midnight. The plaintiff and his attorney protested to the defendant against the continuance of the presence of the officers upon the premises, and were met with the explanation that the defendant would not desist until he had driven Matthew and Thomas Stripp out of his precinct. It appears that the Stripp brothers and one Cavanagh were members of the club, and the defendant suspected them of running a gambling room on the second floor of the building, where the plaintiff maintained his saloon. They frequently patronized the plaintiff's restaurant and his bar. The defendant further said to the plaintiff and his attorney that it would do them no good to protest, and that, as long as the plaintiff did business

in his precinct, he proposed to make him trouble, and said: "You will have a whole lot of trouble, too." From the plaintiff's showing, it appears that the defendant stated to plaintiff's counsel at this interview: "Why, Mr. Reynolds, it is simply a farce to come here and ask me to stop it. I will do nothing of the kind. I propose to keep them [the officers] there until I have driven this man [plaintiff] out of business in my precinct. He must get rid of those people [Stripps and Cavanagh] before I will let him alone." It is alleged, and appears satisfactorily from the proof offered in support of the motion, that the continued presence of the police officers in and upon the plaintiff's premises tended to and had already deprived the plaintiff of the enjoyment of the full measure of business which he had attracted before the officers were posted, that the officers would not allow the butchers to use their wardrobe, and that many of his former customers were deterred from patronizing his eating room on the second floor.

The plaintiff's action is, in nature, to restrain a continuing trespass. That equity will lend its aid in such behalf cannot be doubted. Mohawk & Hudson R. R. Co. v. Archer, 6 Paige, 83. And this branch of equity jurisprudence has been held properly applicable to restrain public officers from performing acts in the discharge of their duties which seemed to come within the nature of trespass tending to the irreparable injury of the aggrieved party. People v. Canal Board, 55 N. Y. 390; People ex rel. Negus v. Dwyer, 90 N. Y. 402; Tribune Ass'n v. Sun Printing & Pub. Ass'n, 7 Hun, 175.

The appellant's contention that this action should not lie, for the reason that the plaintiff will have an adequate remedy at law when his business is finally wiped out, should not prevail. The mere fact of a continuing trespass, if without legal authority and contrary to the wishes of the plaintiff, is quite sufficient to authorize the maintenance of the action. But further than that, it is difficult to comprehend how the plaintiff can ultimately show the extent of his damages. It is clear that the injury to him will be irreparable, and we are convinced that he has no adequate remedy at law. He may sue for the trespass, it is true, but meanwhile his business is being ruined, if his statements are to be believed; and the court below has evidently put greater faith in his version of the few disputed questions presented by the affidavits.

There is nothing in the papers more than the suggestion of a suspicion that the law has ever been violated in the room occupied by the Sunny Brook Pleasure Club, and what statements there are in the affidavits are not worthy the name of proof. Above all that, it is not suggested or intimated that the plaintiff has ever in any way, either on his premises or in the room occupied by the club, committed a crime, or attempted to do so. His worst fault is he has allowed two or three characters who seem to be suspected by the police to enter his place of business. It is true that section 37 of chapter 112, p. 78, of the Laws of 1896, declares that places where liquors are sold by reason of liquor tax certificates are public places, and gives to police officers the right to inspect them; and it is true that section 315 of the charter of the city of New York (Laws 1901, p. 136, c. 466) makes it the duty of police officers to "observe and inspect all places of public amusement, all places of business having excise or other licenses to carry on any

business; * * * all gambling houses, * * * and to repress and restrain all unlawful and disorderly conduct or practices therein"; and it is further made their duty to enforce and prevent the violation of all laws and ordinances in force in the city of New York. The authority carefully to observe and inspect gambling houses and other places is widely different from an imagined authority to occupy such premises, and the defendant's conduct in respect to the plaintiff's premises has amounted to nothing less than an occupation. Nor was the intention of the Legislature to permit, under guise of such granted power, anything approaching permanent occupation, nor can the defendant justify his act by relying upon the direction of the charter that it is the duty of the police to prevent crime. The manner in which the members of the police department may do this is that pointed out by the different statutes treating of its duties and the manner of coping with crime, and should not be extended so as to interfere with the constitutional guaranty that "the right of the people to be secure in their persons, houses, paper and effects, against unreasonable searches and seizures, shall not be violated" (Const. U. S. Amend. 4), and the guaranty that no person shall be deprived of life, liberty, or property without due process of law (Const. N. Y. art. 1, § 6). Were the views of the defendant correct in relation to what his rights and privileges are, to enforce and prevent the violation of the law, the argument, carried to a logical conclusion, would warrant the filling of every resort, evil or otherwise, of every place of business where opportunity was offered to commit crime, in every section of the city where it would be possible to do so, even though such places were private property, with paid public agents, and require them to remain there as mentors of the public morals.

The case of Weiss v. Herlihy, 23 App. Div. 608, 49 N. Y. Supp. 81, is in many respects similar to the one in hand. There the defendant had stationed police officers in a restaurant ostensibly to prevent gambling therein, and the First Department, by a divided court, refused to reverse an order denying plaintiff's motion for an injunction pendente lite. It seems from the prevailing opinion in that case that it had been established with some reasonable degree of certainty that the premises occupied by the plaintiff were those where common gambling had been indulged in, and the majority of the court seemed to be of the opinion that, because the plaintiff's place had been a common gambling house, the defendant, as captain of the police, was within his rights and privileges, and in the performance of his duties, in attempting to prevent further violations of law at that place. The record here discloses no evidence of that character, however, and no suggestion appears that the room occupied by the club was, prior to the advent of Cavanagh and the Stripp brothers, ever used for any purpose of an immoral nature. Practically the only excuse the defendant offers for his conduct was that he suspected these men of being common gamblers; knew they were members of this club; that they had recently abandoned old premises where they were supposed to have conducted a gambling place; and the inference was that they had transferred it to this clubroom. The case also differs in this: that the plaintiff there appeared to be somewhat of a notorious character himself, and had been convict-

ed of crime theretofore. There is no warrantable aspersion cast upon the reputation of the plaintiff in this case, and even were the rule, as adopted by the majority of the court in the Weiss Case, to prevail, no circumstances are disclosed which, under the doctrine there announced, would have authorized the defendant to indulge in his continuing trespass upon the plaintiff's premises.

The view taken leads to the conclusion that the preliminary injunction granted in this case was properly continued during the pendency of the action. A majority of my associates, however, are of the opinion that the order under review goes too far in its recitals, which declare, among other things, that the defendant, a police captain, has acted maliciously and oppressively toward the plaintiff. It seems to them that the court ought not, in awarding a provisional remedy, to declare, as a matter of fact, that an officer has been guilty of a crime; and oppression is a misdemeanor, under section 556 of the Penal Code. The order to be entered upon our decision, therefore, while affirming the order appealed from, so far as it continues the injunction, will modify the same by striking out the recitals declaring that it satisfactorily appears to the court that the defendant has acted maliciously and oppressively. It is enough to warrant the injunction and its continuance that it appears that the acts sought to be restrained constitute a continuing trespass.

Order modified by striking out all allegations charging the defendant with oppression, and, as modified, affirmed, without costs. All concur.