CRAUSHAW et al. v. McADOO, Police Com'r, et al.

(Supreme Court, Special Term, Kings County. June, 1905.)

1. TRESPASS—POLICE OFFICERS—INTERFERENCE WITH BUSINESS.
    Police officers are not entitled to caution people against going to plaintiff's business room, to station themselves permanently in front of his place of business, interfere with his visitors, or subject him to unreasonable or unnecessary inspections, as long as the law is not violated.

2. SAME—INJUNCTION—EVIDENCE.
    In a suit to restrain police officers from picketing plaintiff's place of business, interfering with his customers, and subjecting him to unreasonable inspections, plaintiff alleged that he was a dealer in coffees and teas, supplying hotels and merchants in the vicinity, and was ignorant of wrongdoing or any reason for police interference. His salesroom was on the second floor of a building over a liquor store, which apparently occupied the full width of the ground floor, and consisted of a large room containing a great number of chairs, pictures or photographs on the walls, six chests said to contain tea, and a number of trays containing coffee and tea. There was a room adjoining, occupied by a keeper of the saloon, who defendants claimed was the tenant of the entire premises. The hotels claimed to be supplied by complainant were the "Raines Law"

hotels in the vicinity, and defendants claimed the right to inspect under Laws 1901, p. 136, c. 466, § 315, authorizing the inspection of places having excise licenses and gambling houses. *Held*, that complainant's good faith and the nature of his business were not so clear as to authorize a temporary injunction.

**3. SAME.**

Where complainant occupied premises over a liquor store to conduct an alleged wall-paper business, the only indications of which found there were two or three books of wall-paper samples, and in a suit to restrain police inspection under Laws 1901, p. 136, c. 466, § 315, authorizing the inspection of places having excise licenses and gambling houses, complainant did not attempt to explain the fact that a short time prior, during his occupancy, a large number of telephones were taken from his room, and that large numbers of persons resorted there daily, he was not entitled to a preliminary injunction.

**4. SAME.**

Where complainant operated a liquor store in which three men were recently arrested for book making, though not indicted by the grand jury, he was not entitled to a preliminary injunction to restrain police inspection under Laws 1901, p. 136, c. 466, § 315, authorizing police to inspect places having excise licenses, etc.

**5. SAME.**

Complainant averred that he was conducting a cigar and tobacco business in a private house, on the lower floor of which was displayed a sign "New York and Porto Rico Tobacco Company." Several tobacco dealers certified that complainant conducted a reputable business, and the only excuse offered by defendant police officers for inspecting his premises for a period of three months was that the place was on a list of suspected places given to the police captain. *Held*, that the complainant was entitled to a preliminary injunction restraining further inspections pendente lite.

Separate suits by August Craushaw and three others against William McAdoo, as police commissioner of the borough of Manhattan, and others. Applications for temporary injunctions to restrain alleged trespassing and picketing by policemen in front of and about plaintiffs' premises. Application granted in the case of Thomas F. Murphy, and denied as to the others.

Emil E. Fuchs, for plaintiffs.

John J. Delaney, James D. Bell, James W. Covert, and Samuel Probasco, for defendants.

KELLY, J. These plaintiffs ask temporary injunctions restraining the police in the borough of Manhattan from interfering with them. They allege unlawful trespass on their premises, forcible entry, the posting of policemen in front of plaintiffs' premises, and interference with persons visiting plaintiffs for lawful purposes. The police deny that they have trespassed or used force except in the cases of Howley and Johnson, where they say they made arrests for alleged violation of section 351 of the Penal Code, relating to pool selling, and they justify their visits to the plaintiffs' premises by allegations that they are performing a duty enjoined on them by Greater New York Charter, § 315 (Laws 1901, p. 136, c. 466), to inspect places having excise licenses and gambling houses. They allege that each of the plaintiffs maintains premises which are

on some list maintained by the police as places where it is suspected that the law is violated, and they say they are actuated only by lawful motives and by a desire to do their duty.

This form of action has become quite frequent of late. There is no dispute about the law; there is no question as to the right of the citizen to apply to the court to enjoin trespass and wrongful interference with his property. Wrongful and illegal trespass by public officers is peculiarly obnoxious to our system of government, and, if proven, merits the severest condemnation. Every citizen is directly interested in preventing it. These cases come before the court on motions, on affidavits for injunctions pending trial. The defendants, police officers, deny the facts alleged in the complaint and moving papers. Applications for preliminary injunctions are governed by principles of law as well established as the principles which the plaintiffs assert as the basis for their actions.

"The granting of a temporary injunction is to a very considerable extent discretionary with the court, and in cases where the action is brought to obtain a permanent injunction, so that, in effect, a temporary injunction gives to the plaintiff all the remedy to which he would be entitled if he had finally succeeded in the action, it is not by any means a matter of course to grant a temporary injunction unless the right of the plaintiff is clear, and the injury inflicted upon him by the act sought to be restrained is irreparable. If there is doubt as to the right of the party, or whether the defendant is overstepping the powers which the law gives him, or whether the plaintiff is in such a situation that he is entitled to equitable relief, the arm of the court will not be stretched out to aid the plaintiff, and to give him during the pendency of the action all the relief which he seeks and may obtain by a final judgment." Weiss v. Herlihy, 23 App. Div. 608, 49 N. Y. Supp. 81.

The principle here announced is familiar. It is applicable to this kind of suit in equity as well as to all cases where the plaintiff, in advance of a trial on the merits, where he and his witnesses are produced in court and examined and cross-examined, and where the defendant is also before the court, seeks to obtain preliminary relief notwithstanding the issue raised. Each case depends upon its own facts. Each case as presented requires careful examination by the court, so as to avoid doing wrong to the plaintiff by denying him an injunction, and to the defendant by interfering with his rights. Public officers must not violate the law, and at the same time, from the very necessity for their existence, they have certain obligations and duties in the lawful performance of which we are all interested. In the end, it seems to me that each of these cases reduces itself to very simple limits. On the argument I referred to the necessity of good faith on the part of these plaintiffs when they come into equity. In the Weiss Case cited, Mr. Justice Barrett, in his dissenting opinion, said:

"The plaintiff's good citizenship and general morality have nothing to do with the concrete point presented for consideration. His equities are not founded upon personal qualities or character, nor is he required, as a condition of obtaining equitable relief, to prove his innocence of the charges which induced the defendant to violate his rights. He must, it is true, come into a court of equity with clean hands; that is, with clean hands quoad the very cause of action alleged. If he does this, he fulfills the maxim, although in the abstract he may be persona non grata. In equity as well as in law, all men are equal."

I think this is the all-important question, where the plaintiff comes into court asking a temporary injunction: Is he acting in good faith—does he come into court with clean hands quoad the very cause of action alleged? And so, as stated on the argument, no matter what these plaintiffs may have been, and no matter what the premises may have been, if they present an honest case they are entitled to relief. But if, disregarding the charges or suspicions of the police, the plaintiff's story lacks this important element, if it appears that he is masquerading and attempting to deceive the court as to his occupation or the character of his premises, seeking to obtain the writ of this court by deceit and trick, his action is almost as bad as the unlawful oppression which he charges against the defendants. Now, with these principles in mind—and I refer to them with some hesitation—there is nothing new in what has been stated, but because of the earnestness of the learned counsel who represents all these plaintiffs, no matter in what part of the borough of Manhattan they may be located, I proceed to the individual cases presented.

Craushaw says he is a dealer in teas and coffees, carrying on an honest, legitimate business at No. 57 Bowery, that he supplies hotels and merchants in the vicinity, and that he is absolutely ignorant of wrongdoing or of any reason for police interference. His tea and coffee salesroom is on the second floor of a building on the east side of the Bowery, between Bayard and Canal streets, over a liquor store, which apparently occupies the full width of the ground floor. Plaintiff's counsel, at the request of the court, personally examined the premises, and makes oath that the salesroom consists of a large room with a great number of chairs, pictures or photographs on the walls, six chests said to contain tea, and a number of trays containing coffee and tea. There is a room adjoining, occupied by the keeper of the saloon on the first floor. The defendants say he is the tenant of the entire premises. The hotels referred to as his customers are so-called "Raines Law" hotels in the vicinity. There is no charge that the police "occupy" the premises, as in Hale v. Burns, 101 App. Div. 101, 91 N. Y. Supp. 929. It is claimed that they visit the place, which they admit, saying that policemen in plain clothes go there at times to inspect the premises. Plaintiff says they caution people not to go to his place; that a policeman was stationed at times in front of his premises, who interfered with people who desired to visit him. This the defendants deny. They have no right to caution people against going to plaintiff's room, or to station a policeman permanently in front of his place. They have no right to interfere with his visitors as long as the law is not violated. They have no right to harass or annoy him by unreasonable or unnecessary inspections. If the law is violated, it should not be difficult to obtain the necessary evidence on which to warrant a complaint and an arrest, on which the merits of the charge could be investigated; but on all the facts, and considering plaintiff's delay in applying for relief in equity, I am not satisfied that plaintiff is telling the truth, or that he conducts the business he claims to conduct, and if he is attempting to deceive the court in that respect.

he cannot ask to be believed in his relation of his other grievances. The case is not, in my opinion, clear enough to warrant a temporary injunction, and the motion is denied.

Gustavus Johnson says he is a dealer in wall paper at No. 54 East Tenth street. He occupies premises over a liquor store on the south side of the street, between Broadway and University Place. The police say that a short time ago, and during his occupancy, a number of telephones were taken from his rooms; that large numbers of persons resort there daily. Conceding that there is nothing criminal in the use of telephones or in the fact that people resort to the premises, it is also alleged by the defendants that the only indications of a wall-paper business are found in two or three books of wall-paper samples. The defendants deny any ulterior motive or that any violence is offered, and they say they are inspecting the place. Plaintiff makes no explanation or reference to the incident referred to by the police. The remarks concerning Craushaw's case apply. I am not satisfied that plaintiff's story of the wall-paper business is true. The locality, the surroundings, and a consideration of all the facts lead me to the conclusion that plaintiff had best prove his case at the trial. I deny the motion for an injunction.

George Howley conducts a liquor saloon at No. 124 University Place. The police say that three men were recently arrested on the premises for book making. They were held by the magistrate, but the grand jury failed to indict them. There is no charge of violence, or that the police occupy plaintiff's premises. The charter enjoins on them the duty of inspecting places where liquor is sold. The defendants deny improper or unlawful action. I do not think plaintiff makes out a case for a temporary injunction.

Thomas F. Murphy says he is conducting the cigar and tobacco business at No. 29 West Twenty-Fourth street. This is near Sixth avenue. The premises consist of a private house. The lower floor displays publicly a sign "New York and Porto Rico Tobacco Company." Several tobacco dealers—among others, Mr. Wassermann, who was recently described before me at a trial in Special Term as the largest importer of Havana cigars in the country—certifies that plaintiff conducts a reputable business. The defendants' only explanation of their continued inspection of plaintiff's premises is that the place is on a list of suspected places given to the police captain. No fact is set forth showing why the place is suspicious; no overt act is testified to. The inspection, it seems to me, should have developed something to justify its continuance, if the suspicions were well founded. It has been going on for some three months. There is not a word in the answering affidavits except the police captain's statement that the place is on the list referred to. I do not think this justifies a continuance of the visits of the police, and I think in this case the motion should be granted. If any facts are discovered warranting continued inspection, the defendants may move for a modification of the order.

There are two additional matters to which I should refer. When the police are summoned to a court of equity in cases of this kind, it seems to me the answering papers should be prepared after full

investigation, and that all the facts and the surrounding circumstances should be laid before the court.   The defendants' papers in these cases are far from complete; the affidavits appear to be made on some general form or blank containing generalities and conclusions.   If the cases are such that injunctions should issue, it is important that all the facts should be detailed.   These suits are no different from other applications for injunctions.

The other matter to which I wish to refer is the bringing of these suits in this county.   The premises are all in New York county; the defendants reside there; the alleged trespass occurred there.   The law provides that, in suits such as these against public officers, the venue should be laid in New York county.   It is true the plaintiffs allege a residence in Kings county, but I think the litigations belong in New York county, and should be disposed of there.