O'BRIEN, P. J., INGRAHAM, LAUGHLIN and CLARKE, JJ., concurred.

Judgment affirmed.

---

## Court of Appeals.

### January, 1906.

## TIMOTHY J. DELANEY v. JOHN F. FLOOD.

### (183 N. Y. 323.)

POLICE—WHEN EQUITY WILL NOT PREVENT ENFORCEMENT OF CRIMINAL LAW.

Equity will not intervene to restrain the police authorities of the city of New York from stationing officers outside of a place having a liquor tax certificate, when such authorities suspect that place of being conducted as a disorderly house and from notifying customers who are in the place and those who are about to enter the same that it is a disorderly house which is likely to be raided at any moment, and that those who are on the premises at the time of such raid are liable to arrest. The proprietor of the place, if oppressed or injured by any unlawful act of the authorities, may invoke section 556 of the Penal Code or he may maintain an action at law for damages.

Delaney v. Flood, 105 App. Div. 642, reversed.

APPEAL, by permission, from an order of the Appellate Division of the Supreme Court in the first judicial department, entered June 20, 1905, which affirmed an order of Special Term granting in part and denying in part a motion for a temporary injunction.

The plaintiff is in possession of premises at 54 Rivington street in the city of New York, at which place he conducts what is commonly known as a " Raines Law Hotel." In connection therewith and upon the first floor of the premises he maintains a saloon wherein liquors are sold under a liquor tax certificate duly issued to him. The defendant is a police captain in charge of the twelfth police precinct in said city. As such captain he caused police officers under his command to be stationed in front of plaintiff's premises, who informed persons about to enter that the place was a disorderly house; that it was likely to be raided by the police department and that persons entering would be liable to arrest if found therein.

This action was commenced to restrain the defendant from stationing police officers in front of said premises and from interfering in any way with persons about to enter the same, and also to recover damages against him personally upon the ground that such action on his part constituted an unlawful interference with plaintiff's rights and a trespass thereon.

Before the trial of the action an application was made at Special Term for an injunction *pendente lite* restraining the defendant from doing the acts complained of. Upon the hearing of that application the question whether plaintiff's premises were conducted as a disorderly house frequented by lewd women was contested upon conflicting affidavits.

The learned court at Special Term denied the application in so far as it sought to restrain the posting of police officers in front of plaintiff's premises, but granted an injunction order restraining the defendant and all officers or agents under his control " From in any manner stopping any persons who may

desire to enter the premises known as No. 54 Rivington street in the Borough of Manhattan, city of New York, or voluntarily informing them or any person that the hotel conducted therein is a disorderly place, or that it is likely to be raided by the police department of the city of New York or that if a raid should be made upon said premises any person found therein at the time would be liable to arrest, or by interfering in any other way by voluntary statements as to the character of said premises, or threats of possible raids to be made in or upon them, or by interfering with any person they may see going into said premises, or by informing any person they may see going into said premises, or any person in or upon said premises, that the said premises is a house of prostitution or notorious to the community, or is liable to be raided, or in any way interfering with said premises by voluntary statements as to its character or possible raids."

The Appellate Division affirmed the order of the Special Term, allowed an appeal to this court, and certified the following questions for our determination:

1. "Have the police authorities the power to station policemen outside of a place which has a liquor tax license, and which they suspect of being a disorderly house, and to notify customers who are in the place, and those who are about to enter the premises, that the place is a disorderly house, and as such is likely to be raided by the police at any moment, and that those who are in the place at the time of the raid are liable to arrest?"

2. "Do such acts constitute a trespass?"

3. "If so, will equity intervent to restrain such acts?"

John J. Delany, corporation counsel (Theodore Connoly and Terence Farley of counsel), for appellant.

For the purpose of preventing crime and of repressing and restraining unlawful and disorderly conduct and practices in houses where common prostitutes resort, the police have the power and it is their duty, under section 315 of the charter of

the city of New York, to warn those about to enter of the character of such places and of the probability of their being raided. (Hale v. Burns, 44 Misc. Rep. 1; Lawton v. Steele, 152 U. S. 133; Dabbs v. State, 39 Ark. 353; Dunn v. Com., 49 S. W. Rep. 813; L'Hote v. New Orleans, 51 La. Ann. 93; State v. Williams, 11 S. C. 288; Weiss v. Herlihy, 23 App. Div. 608; King v. People, 83 N. Y. 587; Commonwealth v. Lambert, 12 Allen, 177; Commonwealth v. Cobb, 120 Mass. 356.) Equity will not enjoin the commission of a criminal offense. A court of equity has no criminal jurisdiction and cannot interfere to prevent the commission of criminal or illegal acts unless there is some interference, actual or threatened, with property or rights of a pecuniary nature. (Attorney-General v. Utica Ins. Co., 2 Johns. Ch. 371; Kenny v. Martin, 11 Misc. Rep. 651; Quinlan v. Conlin, 13 Misc. Rep. 568; Campbell v. York, 30 Misc. Rep. 340; Mayor, etc., v. Thorne, 7 Paige, 261; Cranford v. Tyrrell, 128 N. Y. 341; Paulk v. Mayor, etc., 104 Ga. 24; Neaf v. Palmer, 41 L. R. A. 219; Crighto v. Dahmer, 70 Miss. 602.) The plaintiff has an adequate remedy at law; he does not come into court with clean hands; and even if the acts complained of do constitute a trespass, he should be remitted to an action for damages. (Weiss v. Herlihy, 23 App. Div. 608; Pon v. Wittmann, 81 Pac. Rep. 984; Hale v. Burns, 101 App. Div. 101; Sherman v. Kennedy, 15 Abb. Pr. 201; Cercle Francaise v. French, 44 Hun, 123; Prendrill v. Kennedy, 34 How. Pr. 416; Murphy v. Board of Police, 11 Abb. [N. C.] 337; Fincke v. Police Commissioners, 66 How. Pr. 319; Kramer v. Board of Police, 21 J. & S. 492; Davis v. American Society, 75 N. Y. 362.)

No appearance for respondent.

WERNER, J.: The three questions certified to us, when considered separately, cannot be answered categorically; but when

they are reduced in terms to the concrete and practical issue involved, they present a question of substantial importance that should be decided without regard to mere matters of form. The question, in substance, is whether equity will intervene to restrain the police authorities from stationing officers outside of a place having a liquor tax certificate, when such authorities suspect that place of being conducted as a disorderly house; and from notifying customers who are in the place and those who are about to enter the same that it is a disorderly house which is likely to be raided at any moment, and that those who are on the premises at the time of such raid are liable to arrest.

The pivotal point around which this question revolves is, that the plaintiff is engaged in the sale of intoxicating liquors. That is a business which, when uncontrolled and unregulated by law, is fraught with grave dangers to the public peace, health, morals and safety; and even when regulated by statute, as far as it may be, it is productive of much idleness, pauperism, disorder and crime. In order to prevent and to minimize these evils, as far as possible, it has been deemed necessary for the welfare of society that the business of liquor selling should be hedged about by conditions and restraints from which other callings may be safely exempted. Under the law of our State one of these conditions is that no one shall be permitted to carry on that business without a liquor tax certificate duly issued by the proper authorities; and another is that " no person, either as owner or agent, shall permit any place where the traffic in liquors is carried on to become disorderly." (Liquor Tax Law sec. 23, subd. 9.)

To effectuate this command of the law, " All officers authorized to make arrests in any city . . . may, in the performance of their duties, enter upon any premises where the traffic in liquors is carried on or liquors are exposed for sale at any time when such premises are open." The defendant was concededly an officer having authority to make arrests in the

city of New York, and as a member of the police force in that municipality it was his duty " at all times of day and night . . . to especially preserve the public peace, prevent crime, detect and arrest offenders, . . . carefully observe and inspect all places of public amusement, all places of business having excise or other licenses to carry on any business; all houses of ill-fame or prostitution, and houses where common pròstitutes resort or reside, . . . and to repress and restrain all unlawful and disorderly conduct or practices therein; enforce and prevent the violation of all laws and ordinances in force in said city." (New York Charter, L. 1901, chap. 466, sec. 315.)

The substance of the allegations of the complaint and the affidavits upon which the injunction herein was granted is that the plaintiff is conducting a lawful business in a proper manner, and that the defendant has maliciously, oppressively and unlawfully interdicted his business in the particulars set forth and restrained by the injunction. Opposed to these allegations are the numerous affidavits presented by the defendant, containing specific and detailed statements which tend very strongly to show that there was abundant basis for the suspicion that the plaintiff's " hotel " was a place in which disorderly practices prevailed. But we are not now concerned with the truth or falsity of these conflicting assertions. They are referred to merely for the purpose of showing that, upon the point which is determinative of the question whether the defendant acted lawfully or otherwise, there is a sharp controversy of fact. If the plaintiff did in fact maintain a disorderly place, it was the defendant's right, if it was not his duty, to warn persons about to enter against becoming participators in plaintiff's violation of the law. The whole question, whether the acts of the defendant and his inferior officers were legal or not, depends entirely upon the character of this so-called hotel. This basic question should not be determined in a court of equity upon affidavits, but in a court of law and by evidence that is tested and scrutinized

according to the settled rules. In a case quite similar in principle, although different in its facts (Davis v. Am. Society for the Prevention of Cruelty to Animals, 75 N. Y. 362), this court has held that a court of equity is not the place for the trial of such a question. There the plaintiff was engaged in the business of slaughtering hogs in the city of New York. The president of the defendant society was an officer authorized to make arrests and he went upon the premises of Davis, threatening him and his employees with arrest unless they would discontinue their method of killing hogs, which was claimed to be unnecessarily cruel. The action was in equity to restrain the defendant, its officers and agents, from making such arrests. At the trial the plaintiff adduced evidence which strongly tended to show that his method of slaughter was not unnecessarily cruel. Notwithstanding this evidence the complaint was dismissed and, upon appeal to this court, it was held that the case made by the pleadings and proofs was not one of equitable cognizance. In speaking for this court upon that question, the late Judge EARL said: "A person threatened with arrest for keeping a bawdy house, or for violating the excise law, or even for the crime of murder, upon the allegation of his innocence of the crime charged, and of irreparable mischief which would follow his arrest, could always draw the question of his guilt or innocence from trial in the proper forum. An innocent person upon an accusation of crime, may be arrested and ruined in his character and property, and the damage he thus sustains is *damnum absque injurio,* unless the case is such that he can maintain an action for malicious prosecution or false imprisonment. He is exposed to the risks of such damage by being a member of an organized society and his compensation for such risks may be found in the general welfare which society is organized to promote. This action is absolutely without sanction in the precedents or principles of equity."

If equity will not intervene in behalf of a concededly lawful

business of a fixed and unchanging character, to prevent the criminal prosecution of some alleged unlawful act in its conduct, how can such intervention be justified in a case where the business itself, even when lawfully conducted, exists by mere sufferance of law, or where it is of such a character that it may be lawful or unlawful at the will of him who conducts it? Such a situation as is presented in the case at bar is one which, in its very nature, cannot be adequately dealt with by a court of equity. What might be a trespass at one instant of time may be a perfectly justifiable and necessary act at another. Here lies the fundamental distinction between the case at bar and that class of cases in which equity assumes jurisdiction to restrain trespasses that are continuous or permanent in their nature, and where such relief is necessary to obviate multiplicity of actions at law and to prevent continuity of wrong. This case is also intrinsically unlike the cases of which People ex rel. Stearns v. Marr (181 N. Y. 463) is a type, in which " strikers " have been enjoined against interference with a lawful business by unlawful " picketing." The whole subject may be briefly summed up in the statement that we see nothing in the case at bar to take it out of the ordinary rule that equity will not interfere to prevent the enforcement of the criminal law. If the plaintiff has been oppressed and injured by any unlawful act of the defendant he may invoke the Penal Code (sec. 556), or he may have an action at law for his damages.

The orders of the Special Term and Appellate Division should be reversed and injunction vacated. The third question certified is answered in the negative. The first and second are not answered. Costs to the appellant in all the courts.

CULLEN, Ch. J., GRAY, BARTLETT, HAIGHT and VANN, JJ., concur; O'BRIEN, J., not voting.

Orders reversed, etc.