JOSEPH LYTTLE, Doing Business under the Trade Name of QUEENS COUNTY KENNELS, Plaintiff, *v.* LOUIS J. VALENTINE, as Police Commissioner of the City of New York, CHARLES P. SULLIVAN, as District Attorney of Queens County, and WILLIAM F. BRUNNER, as Sheriff of Queens County, Defendants.

Supreme Court, Special Term, Queens County, August 13, 1936.

*Daniel J. Byrne,* for the plaintiff.

*Paul Windels, Corporation Counsel [William C. Chanler* and *Charles C. Weinstein* of counsel], for the defendant Valentine.

*J. Irwin Shapiro, Assistant District Attorney,* for the defendant Sullivan.

*Frederic S. Marsell,* for the defendant Brunner.

*Wolfson & Sand [Joseph H. Sand* and *Philip Wolfson* of counsel], for the Sporting Realty Corporation (landlord), *amicus curiæ.*

HOOLEY, J. Motion by plaintiff for an order restraining the police commissioner of the city of New York and the district attorney and sheriff of Queens county from in any way interfering with the plaintiff in the conduct of his business as he is now conducting it and as set forth in the moving papers during the pendency of this action which is brought for a permanent injunction.

The moving affidavits allege that the plaintiff is engaged in business under the trade name of Queens County Kennels in buying, selling, trading, breeding, training and exhibiting greyhound dogs for profit; that in conducting his said business and to aid him in selling dogs, he sells to the people who attend his sales, valid options

under which he agrees to sell to the holders thereof, at their discretion, a specified dog at a fixed price within a certain time and that at times he offers to repurchase, and does repurchase, options which he had previously sold. Plaintiff claims that each dog which is offered for sale is owned by him absolutely or that he holds an option to purchase such dog. He maintains that large numbers of persons attend his sales, that the dogs are put through races so that prospective purchasers may view them, and he sets forth a complicated and elaborate system of buying and selling options for purchase of greyhounds participating in the races. Defendants, the police commissioner, district attorney and sheriff aforesaid, with exceeding vigor contest the application. They maintain that the so-called option system is nothing more or less than a thin disguise for the open and flagrant violation of the criminal law, particularly section 986 of the Penal Law, and is in violation of the Constitution of the State of New York.

There is difference in the minds of parties and there is confusion in judicial decisions with reference to the legality of the operation of plaintiff's business sought to be protected in this proceeding. The Constitution provides that no kind of gambling shall be authorized or allowed within this State and the Legislature is directed to pass appropriate laws to prevent such offenses. Nevertheless, gambling is in practical effect made possible by the Legislature in the enactment of a statute passed, under the title of an act relating to the improving and breeding of horses, which expressly provides that the provisions of the Penal Law providing punishment for gambling shall not apply to betting on horse races at race tracks, but that the only penalty therefor shall be the forfeiture, in a civil action, of the amount wagered. (See Laws of 1934, chap. 233.)

There is in fact no essential difference between horse racing and dog racing. Neither is there any essential difference between betting on horse races and betting on dog races. If one is wrong, so is the other. The Legislature recognized this fact at the last session by the passage of a bill which would have had the effect of permitting betting at dog races, but the Governor vetoed the bill.

This court must take the law as it finds it. Nor should it seek to trespass upon the legislative branch of the government. But if the dog race proprietors be accused of resorting to subterfuge, the court observes that it is not strange that they maintain that horse race betting is permitted through legal subterfuge and that it is grossly unfair to permit horse race betting and not dog race betting. However, courts do not sit in review of the discretion of the Legislature or determine upon the expediency, wisdom or propriety of legislative action in matters within its power.

It may well be that the trend of thought in this State at the present time toward betting is somewhat different from that which it was at the time of the adoption of the constitutional provision relating to gambling. In that connection it is interesting to note the difficulty during the past week which attended the selection of a jury in a lottery case because of the inability to find jurors who had not purchased lottery tickets.

It is possible that as the views of people change on such matters as Prohibition, they may also change on such matters as betting. If this be true, no doubt in time the statutes of our State will give effect to such change of sentiment. But until then, this court is bound by existing law.

At the present time a system generally like the plan of the plaintiff is in vogue at Mineola, in Nassau county, where dog races are held nightly on week days. This is permitted under a decision by way of a declaratory judgment made by Mr. Justice BONYNGE, whose opinion in the matter (*Reed* v. *Littleton*, 159 Misc. 853) is marked by rapier like thrusts at and pungent observations upon a system of pretense and sham, which are most refreshing.

However, the question in that case is not the question here. That case was decided after a trial. There both parties asked for a declaratory judgment and no question was present of restraining the law-enforcing agencies of the county by temporary injunction. No question of jurisdiction was there involved. It is also interesting to note that after eight years of dog racing in Nassau county, the board of supervisors of that county passed a resolution approving the same.

In *Triangle Mint Corp.* v. *Mulrooney* (257 N. Y. 200, 201) the court said: "An equity court should exercise its jurisdiction to restrain the police from enforcing a criminal statute, the enforcement of which threatens property damage, only in cases where a clear legal right to that relief is established."

In *International Mutoscope Reel Co., Inc.,* v. *Valentine* (the appeal in which is reported in 271 N. Y. 622), in which action plaintiff sought a permanent injunction against the police commissioner restraining him from seizing or molesting certain machines of the crane, claw or digger type, claimed to be gambling devices, Mr. Justice STEUER, after a trial, said: " What is a clear legal right is not as clear as the phrase but I take it to mean that the machine must be of such a character that it cannot possibly be operated to violate any section of the Penal Law."

The question, therefore, arises: Has the plaintiff established a clear legal right? Is plaintiff's proposed system of buying and selling options of such a character that it cannot possibly be operated in such a manner as to violate section 986 of the Penal Law?

On this question the court is left in some doubt by the sharply conflicting affidavits. The plaintiff's affidavits present the picture of a man attempting to conduct a legal business in an honest and legal manner. The defendants' affidavits present the picture of the plaintiff conducting a gambling enterprise and maintain that the sale and repurchase of options is nothing more or less than a paper system deliberately designed for no purpose other than to promote gambling.

In *Delaney* v. *Flood* (183 N. Y. 323), which was an application for a temporary injunction restraining the police from posting police officers in front of plaintiff's premises and from notifying plaintiff's customers that it was a disorderly house and likely to be raided, the court, after remarking about conflicting affidavits, as in the case at bar, said: " But we are not now concerned with the truth or falsity of these conflicting assertions. They are referred to merely for the purpose of showing that, upon the point which is determinative of the question whether the defendant acted lawfully or otherwise, there is a sharp controversy of fact. * * * *This basic question should not be determined in a court of equity upon affidavits, but in a court of law and by evidence that is tested and scrutinized according to the settled rules.*"

With these conflicting affidavits before the court and with the decision in *Delaney* v. *Flood* (*supra*) in mind, the court is constrained to deny the application for a temporary injunction. The clear legal right mentioned above is not here present. The matter is left in doubt by the conflicting affidavits. Motion for a temporary injunction denied.

The defendants move for the affirmative relief of the dismissal of the complaint. Upon this motion the court is confined to the consideration of the complaint alone. A complaint states a cause of action if under its allegations evidence may be admitted which will prove a cause of action. It may well be that the proof which plaintiff may adduce at the trial will establish a cause of action. Motion to dismiss complaint denied.