Monte Vulture Social Club, Inc., et al., Plaintiffs, *v.* Arthur W. Wallander, as Police Commissioner of the City of New York, Defendant.

Supreme Court, Special Term, New York County, March 6, 1947.

*Allen Goodwin* and *Vito Marcantonio* for plaintiffs.

*Charles E. Murphy, Corporation Counsel (Daniel Rosen, Saul Moskoff* and *Murray Rudman* of counsel), for defendant.

SHIENTAG, J.   Plaintiffs are social and political clubs located in the East Harlem district within the territorial jurisdiction of the 23d and 25th Precincts of the Police Department.   They seek an injunction before trial to restrain the Police Commis- sioner and the members of his department (1) from establishing or fixing any curfew or closing hour for the plaintiff's club rooms and from enforcing any such curfew or closing hour, and (2) from interfering with the plaintiffs and their members in the lawful use, occupation and maintenance of their club rooms.

It appears from the affidavits submitted on behalf of the Police Department that in December, 1946, Division 4A of the depart- ment was created to cope with an alleged increase of crime and unlawful activity in the East Harlem area referred to.   Various complaints had been received, including one from the Bureau of Narcotics of the Treasury Department, to the effect that the East Harlem district harbored the most flagrant '' violators of the laws concerning burglary, hi-jacking, robbery, gambling, black market and various other criminal activities.''

According to the defendant, the action taken by the members of the 4A Division to combat and cope with these conditions was normal and followed regular police routine procedure through- out the city.   Many clubs were visited and raided.   The plain- tiffs, however, are fifteen clubs so raided which claim to be innocent of any wrongdoing and allege that they are being persecuted by these continued visitations and unjustified arrests of their members.

In the plaintiffs' affidavits, some thirty-one in number, it is alleged that they were ordered to close three club rooms entirely, that four clubs were ordered to close at early hours, and that eight clubs were ordered to close by ten o'clock in the evening. Four plaintiffs, the Monte Vulture Social Club, Lehigh Workers

Independent Political Association, Night Hawks Social Club and S. M. S. Gioventu Leonforte, had a total of sixty members arrested. All of those so arrested were acquitted except one who was fined $3.

Defendant has submitted forty affidavits signed by thirty-one police officers. They refer to various raids on clubs, including the plaintiffs. They state the names of many persons with police records who have been picked up in these raids. Of the ten names of men found in the plaintiffs' clubs with criminal records, five seem to be cases of mistaken identity.

The Police Commissioner asserts no right to establish a curfew or closing hour for any of these clubs. Affidavits submitted in opposition set forth unequivocally that at no time did the Police Commissioner or any of his subordinates ever attempt to threaten to impose or to establish a curfew or closing hour.

With respect to interference with the members in their clubs, the plaintiffs assert that the conduct of the police is not dictated. by honest efforts to prevent or to put an end to crime. They contend that the activities of the police are oppressive and are actuated solely by the motive to compel the clubs to close for reasons unrelated to crime, by making it hazardous for their members who are law-abiding citizens peaceably to assemble therein. On the other hand, the affidavits submitted by the police are offered to show that the visits to the clubs and the arrests made therein are entirely in the line of legitimate police duty.

The police, of necessity, must be allowed a broad discretion as to the character and extent of the inspections and investigations they shall make, with a view to preventing crime and apprehending offenders. But the police may not themselves violate the law. We live under a government of law and it is a commonplace to maintain that the " Rule of Law " involves an absence of arbitrary power on the part of the government or of any official thereof. There is a sharp line of distinction between legitimate police investigation and prosecution on the one hand and oppressive action and persecution on the other hand. A court of equity will not interfere with the police in the performance of their duties unless their conduct is clearly shown to be illegal or corrupt. Plaintiffs must show not only that they are not violating the law and that their premises are not being used for any illegal purpose, but also that there are no reasonable grounds to justify a belief on the part of the police that the plaintiffs have violated the law or that they are permitting their premises to be used for an unlawful purpose.

These basic and crucial questions should not be determined in advance of trial upon conflicting affidavits, but should be resolved " by evidence that is tested and scrutinized according to the settled rules." (*Delaney* v. *Flood*, 183 N. Y. 323, 328.)

Accordingly, the motion for an injunction *pendente lite* is denied, but inasmuch as both parties have signified their willingness to proceed to a prompt trial, an order to that effect may be entered. Settle order.