The People of the State of New York, Plaintiff, *v.* Benjamin Milone, Defendant.

County Court, Kings County, June, 1922.

**Search and seizure — police entering pool room without force and discovering a revolver may arrest proprietor and use weapon as evidence, although they had no search warrant.**

The statute (Civil Rights Law, § 8) against unreasonable searches must not be permitted to afford a haven of protection for crime by embarrassing the legitimate functioning of the police power, the first and fundamental conception of which is the maintenance of peace and order.

A search without a warrant may be reasonable, and a search with a warrant may be unreasonable, and whether a search is unreasonable within the meaning of the statute depends upon the circumstances uninfluenced by the fact that the search was made without a warrant.

In the administration of justice it has always been permissible for police officers in the performance of their duties as such to follow criminals into their hiding places and to search the latter for evidence in support of a conviction, and where the circumstances are such as to reasonably justify summary exercise of the police power, the remedy afforded by section 792 of the Code of Criminal Procedure may be applied without the issuance of a warrant to justify search and seizure.

Two police officers without force or opposition entered defendant's licensed pool room during business hours and took possession of a revolver, which they found behind a cigar counter. They placed the defendant under arrest upon a charge of unlawfully having the revolver in his possession. Although no warrant, either for the search or the arrest, had been issued, the evidence favored the officers' version of the circumstances immediately preceding the finding and seizure of the revolver following an admission by the defendant that there was a revolver in a box which apparently he was hiding and that he had no permit for it. Defendant having been indicted on the charge made a motion for an inspection of the minutes of the grand jury; for an order restraining the use of the revolver as evidence against him upon the trial of the indictment, and also for an order directing the return of the revolver to him. Upon denying the motion *in toto*, *held*, that the case was one solely of state jurisdiction.

The entry of the officers upon the premises was lawful, though made without a warrant, and in the circumstances the taking of the revolver did not constitute an unreasonable search and seizure within the meaning of section 8 of the Civil Rights Law.

Motion to inspect grand jury minutes, and for an order restraining the use of a revolver as evidence against defendant and for its return.

*John E. Ruston*, district attorney (*Ralph E. Hemstreet*, of counsel), for plaintiff.

*Leibowitz & Shientag*, for defendant.

Taylor, J. The defendant moves for an inspection of the grand jury minutes, upon which was found an indictment against

him for having in his possession, unlawfully, a revolver; also for an order restraining the district attorney from using such revolver in evidence against him upon the trial of the indictment; also for an order directing the police commissioner to return the revolver to the defendant.

The following facts are undisputed: The defendant ran a licensed pool parlor. Two police officers entered, without force or opposition, during business hours, and took into their possession a revolver, which they found behind a cigar counter, and then placed the defendant under arrest upon the charge above stated. There were no warrants, either for search of the premises or for an arrest. There is a dispute as to the circumstances immediately preceding the finding and seizure of the revolver. Affidavits by two police officers state that they saw the defendant apparently trying to hide a box; that he was asked what was in it, and replied that it was a gun, for which he had no permit. One of the officers then " took " the box and " took " the pistol out of it. An affidavit by the defendant states that there was a general search of the premises, by both officers, against his will and protest, and that " in rummaging through some effects in the cigar case," one of the officers " exhibited " to him a revolver, and accused him of being the owner. It is necessary for the purpose of this motion to determine any disputed facts. The evidence favors the officers' version. We must, therefore, assume the following: Although the entry was without warrant, it was lawful for the reason that the premises consisted of a public pool parlor then and there open and doing business, and the officers were at no time ordered to leave. The revolver was seized following an admission by the defendant that there was a revolver in the box which he was apparently hiding, and that he had no permit for it. The basic question to be here decided is as to whether or not the taking of the revolver consisted of an unreasonable search and seizure within the meaning of section 8 of the Civil Rights Law. If lawful, the motion must be in all respects denied and all other questions become academic. The case is solely one of state jurisdiction. The Federal Constitution does not apply. *Barron* v. *Mayor & City Council of Baltimore*, 7 Pet. 243; *Spies* v. *Illinois*, 123 U. S. 131; *Brown* v. *New Jersey*, 175 id. 172; *Maxwell* v. *Dow*, 176 id. 581; *Twining* v. *New Jersey*, 211 id. 78; *Lloyd* v. *Dollinson*, 194 id. 447; *Bolln* v. *Nebraska*, 176 id. 83. As to whether or not the search was unreasonable within the meaning of the statute depends upon the circumstances, and is not influenced by the fact that it was without warrant. A search without warrant may be reasonable, and a search with warrant may be unreasonable. *Entick* v. *Carrington*,

10 How. St. Tr. 1029; *Smith* v. *Jerome,* 47 Misc. Rep. 22; *Houghton* v. *Bachmann,* 47 Barb. 388; *Blazier* v. *Miller,* 10 Hun, 435; *Cooper* v. *Schultz,* 32 How. Pr. 107, 121.

Constitutional and legislative enactments against unreasonable searches had their origin in a strongly hostile public opinion stirred up by searches under general warrants and writs of assistance. In England the law and the remedy were interpreted and applied by judicial decision. *Entick* v. *Carrington, supra; Money* v. *Leach,* 3 Burr. 1742; *Huckle* v. *Money,* 2 Wils. 205. In the United States the law was by constitutional and legislative enactment, although then considered by some as unnecessary for the reason that our courts would in all likelihood have followed the English decisions anyway. See article by Osmond K. Fraenkel, 34 Harvard Law Review, 361.

The evil which our enactment was designed to combat was, therefore, concrete rather than theoretical. The statute must be interpreted in that light. It must not be permitted to afford a haven of protection for crime, by embarrassing legitimate functioning of the police power. The danger in stating in theory a remedy for a concrete condition is that the theory is apt to run wild and outstrip the sound purpose which gave it life. The welfare and protection of law-abiding people should be neither sacrificed nor impaired by maudlin construction of a statute designed to benefit rather than to work against the best interests of organized society. It has always been permissible for police officers in performance of their official function to follow criminals into their hiding places and to search the latter for evidence to support conviction. As to whether such search and seizure are unreasonable or should be under warrant depends upon the circumstances. The purpose must be to aid the administration of justice. As stated in *Robinson* v. *Richardson,* 13 Gray (Mass.), 454, 457: " All searches therefore, which are instituted and pursued upon the complaint or suggestion of one party into the house or possessions of another, in order to secure a personal advantage, and not with any design to afford aid in the administration of justice in reference to acts or offenses in violation of penal laws, must be held to be unreasonable." It has never been required to procure search warrants in all cases of entering upon and searching private dwellings or premises. Search warrants had their origin in cases where the circumstances failed to afford legal justification for summary entry, or where no crime had as yet been committed, or where the paper or property to be seized was in the premises, or possession, of a third party, and in the latter case it was essential that the paper or property be required for the purposes of detecting or punishing crime. 4 Coke

Inst. 176, 177; 2 Hale P. C. 149$^r$. In this state, prior to the first search warrant statute (R. S. of 1829, part 4, tit. 7, chap. 2, art. 3, §§ 25–28, 30–34), search warrants were issued in accordance with the English practice. *Bell* v. *Clapp*, 10 Johns. 263. The present statute (Code Crim. Pro. § 792) substantially embodies the common-law grounds; but, as above stated, the existence of those grounds does not always necessitate the issuance of a warrant to justify search and seizure. The remedy may be applied without warrant where the circumstances are such as to reasonably justify summary exercise of the police power.

To attempt to lay down accurately a general rule defining elements of unreasonableness applicable to all cases may lead to future difficulties and will, therefore, be avoided. Each case must stand in the light of its own circumstances. Counsel for the defendant has called attention to recent liquor decisions. The tendency of the courts to protect individuals and privately owned vehicles of transportation from arbitrary search for illegally carried liquor affords no basis for tightening up the evidentiary requirements in all cases of search and seizure. The elements which enter into and govern the exercise of police power are largely of practical expediency and depend in a measure upon the relative force, from a criminal law standpoint, of the potentialities. It is easy to obtain the viewpoint that general or even specific searches for privately owned liquor, upon mere suspicion, would tend to intolerable abuses fraught with grave danger to popular conceptions of individual liberty, at the same time serving no particular purpose from a standpoint of maintaining peace and order, which is the first and fundamental conception of police power. Similarly, the obnoxious practice of insufficiently grounded general or specific search for concealed firearms, on occasions involving no crises in the peace and welfare of the body politic, may merit similar condemnation. But the search for and seizure of a concealed firearm, upon reasonable ground to believe that a crime is immediately involved in possessing the same, or otherwise by the person in possession of the searched premises, by duly constituted peace officers lawfully upon such premises, may present an aspect not only of sound expediency from a standpoint of police power, but one which will never crystallize in popular condemnation, for the reason that law-abiding persons, living in law-abiding communities, will take no exception to it as involving infringement upon legitimate personal liberty.

The case at bar contains no elements smacking of the abuses which led up to the enactment governing unreasonable searches and seizures. Nor is there any other element present which may

Surrogate's Court, Westchester County, June, 1922.    [Vol. 119

sensibly and with due consideration of the legitimate functions of police power, be deemed unreasonable, either as to the manner of the search or propriety of the seizure.

Motion denied.

Ordered accordingly.