John J. Walsh, J.
‘ ‘ The right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.” (U. S. Const., Bill of Eights, art. IV; N. Y. Const., art. I, § 12.)
This fundamental right of the People was construed in our Federal courts as requiring the exclusion from evidence in a criminal trial held in a Federal court of any evidence obtained as a result of the violation of this fundamental right. At the same time, the United States Supreme Court held, and as recently as 1949 in Wolf v. Colorado (338 U. S. 25) reaffirmed that the State courts were at liberty to accept or reject the exclusionary rule with respect to evidence obtained as a result of unreasonable search and seizure.
New York State had long held to the doctrine that it would not follow the exclusionary rule and that competent evidence regardless of the manner in which it was obtained would be admitted into evidence in a criminal case.
The eminent jurist, Judge Benjamin Cabdozo in a celebrated opinion in People v. Defore (242 N. Y. 13, 24-25 [1926]) said: “ No doubt the protection of the statute would be greater from the point of view of the individual whose privacy had been invaded if the government were required to ignore what it had learned through the invasion. The question is whether protection for the individual would not be gained at a disproportionate loss of protection for society. On the one side is the social need that crime shall be repressed. On the other, the social need that law shall not be flouted by the insolence of office. There are dangers in any choice.”
In Mapp v. Ohio (367 U. S. 643 [1961]) the United States Supreme Court imposed the exclusionary rule upon all the States as a requirement of due process. To provide a means whereby motions to suppress evidence alleged to have been obtained as a result of unlawful search and seizure, the State Legislature in 1962 provided for a pretrial hearing (Code Crim. Pro., §§ 813-c-813-e). Such a hearing was held in the instant ease.
The facts as developed at the hearing are not particularly disputed.
It is alleged in the indictment against the defendant that she committed the crime of murder in the second degree by shooting *251 one R. T. Barnes in a small restaurant in the City of Utica. The defendant was a waitress in the restaurant and during the course of an argument between Barnes and the defendant in the public portion of the restaurant, the People claim that the defendant shot the deceased with a rifle that was on the premises.
The police arrived shortly thereafter and found the body on the floor of the restaurant. They questioned the defendant and from the very limited testimony allowed by the court on this pretrial proceeding as to the conversation between the police and the defendant (the defendant being the only witness called at the hearing) it appears that the defendant told the police that the rifle was “ usually” kept in the kitchen part of the restaurant. The police then went into the kitchen part of the restaurant through a door which had a sign “ keep out ” and found a rifle and some shells therein.
The defendant claims that this seizure was unlawful and in violation of her constitutional rights against unlawful search and seizure. She contends that the police had no search warrant at the time; that she did not consent to the search and that she had not been arrested at the time of the alleged search. In the absence of any one of these three conditions, she claims that the seizure of the rifle and the shells in the kitchen and their use upon the trial is unlawful.
All of the defendant’s contentions are grounded upon the claim that the kitchen although used in connection with the public business of the restaurant was nevertheless part of her residence, since she resided with the restaurant owner in a room or rooms in the rear and the kitchen was also used as part of the residence.
The argument of the defendant is that the Court of Appeals in People v. Loria (10 N Y 2d 368, 373) set forth only three conditions which would make a seizure lawful. ‘ ‘ A search is reasonable if conducted pursuant to a legal search warrant, by consent, or incident to a lawful arrest.”
In the Loria case, there was no search warrant, and no arrest and the court said (p. 373): “ It may hardly be said that the unlocking of the door by Perillo’s wife was a consent to search the apartment, for entry gained by submission to authority after a threat to kick down the door is not entry gained by consent ”.
In People v. Yarmosh (11 N Y 2d 397) the seizure was held illegal because the police officers broke into a dwelling without a search warrant.
In People v. O’Neill (11 N Y 2d 148) the Court of Appeals in a misdemeanor case held that a search by a police officer initially *252 on the premises by consent was illegal because it was made by him over the vigorous protest of the occupant. No protest is evident in the instant case.
The police were lawfully on the premises. A body was lying on the floor in plain sight and the defendant was on the premises. It was their plain duty to investigate the homicide and to determine whether or not a crime had in fact been committed. The means of death became an important item of evidence and its recovery, if possible, was the duty of the police. The far-reaching consequences of the application of the doctrine of search and seizure was pointed out by Judge Cakdozo in the Defore case (242 N. Y. 13, 23-24, supra): “ The pettiest peace officer would have it in his power through overzeal or indiscretion to confer immunity upon an offender for crimes the most flagitious. A room is searched against the law, and the body of a murdered man is found. If the place of discovery may not be proved, the other circumstances may be insufficient to connect the defendant with the crime. The privacy of the home has been infringed, and the murderer goes free.”
It would go far beyond the bounds of reasonable construction to say in the instant case that if the body had been found in the kitchen portion of the restaurant that the People might not introduce into evidence photographs taken of what they had found at the scene.
Does the mere existence of a wall or a door with a sign “ Do not Enter ’ ’ constitute the difference between what is lawfully ■seized and what is constitutionally proscribed? In some cases, this might be reasonable; in others, substance would become a slave to form.
In the instant case, there is no question that the kitchen was searched without a search warrant; there seems little doubt that the seizure was made before an arrest was effected (People v. Wieczorek, 16 A D 2d 1025); and the sole question on the matter of consent is whether the failure of the defendant to protest or refuse the search constituted an implied consent to the search.
The People did not ransack the kitchen; they went to the spot where the defendant said the rifle was “ usually ” kept and found it there. (See Lawfulness of nonconsensual search and seizue without warrant, prior to arrest. Ann. 89 A.L.R. 2d 715 et seq.)
In People v. Milone (119 Misc. 22 [1922]) Kings County Judge Taylor wrote a well-considered opinion in which he denied an application to suppress the seizure of a revolver in a licensed pool hall.
*253 Although this decision predated the Mapp case and was in agreement with the Defore case, much of the opinion could be and is cited by this court in determining the instant motion.
“ As to whether or not the search was unreasonable within the meaning of the statute depends upon the circumstances, and is not influenced by the fact that it was without warrant. A search without warrant may be reasonable, and a search with warrant may be unreasonable [citing cases] ” (People v. Milone, 119 Misc. 22, 23, supra).
“ Constitutional and legislative enactments against unreasonable searches had their origin in a strongly hostile public opinion stirred up by searches under general warrants and writs of assistance ” (p. 24).
‘1 The evil which our enactment was designed to combat was, therefore, concrete rather than theoretical. The statute must be interpreted in that light. It must not be permitted to afford a haven of protection for crime, by embarrassing legitimate functioning of the police power. The danger in stating in theory a remedy for a concrete condition is that the theory is apt to run wild and outstrip the sound purpose which gave it life. The welfare and protection of law-abiding people should be neither sacrificed nor impaired by maudlin construction of a statute designed to benefit rather than to work against the best interests of organized society ” (p. 24).
“ To attempt to lay down accurately a general rule defining elements of unreasonableness applicable to all eases may lead to future difficulties and will, therefore, be avoided. Each case must stand in the light of its own circumstances * * * the search for and seizure of a concealed firearm, upon reasonable ground to believe that a crime is immediately involved in possessing the same, or otherwise by the person in possession of the searchced premises, by duly constituted peace officers lawfully upon such premises, may present an aspect not only of sound expediency from a standpoint of police power, but one which will never crystallize in popular condemnation, for the reason that law-abiding persons, living in law-abiding communities, will take no exception to it as involving infringement upon legitimate personal liberty ” (p. 25).
“ The case at bar contains no elements smacking of the abuses which led up to the enactment governing unreasonable searches and seizures. Nor is there any other element present which may sensibly and with due consideration of the legitimate functions of police power, be deemed unreasonable, either as to the manner of the search or propriety of the seizure ” (pp. 25-26). Motion to suppress is denied.