FAIRMONT ATHLETIC CLUB OF GREATER NEW YORK v. BINGHAM et al.

(Supreme Court, Special Term, New York County.   December 31, 1908.)

1. SEARCHES AND SEIZURES (§ 3*)—WARRANT.
    The police may not forcibly enter without a warrant a private club on suspicion that a misdemeanor is being committed or may be committed; they having no such power of search.
    [Ed. Note.—For other cases, see Searches and Seizures, Dec. Dig. § 3.*]

2. INJUNCTION (§ 77*)—CONTINUING TRESPASS.
    The continuing trespass of police in forcibly entering without warrant a private club on suspicion that a misdemeanor is being committed or

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

may be committed will be enjoined as the only adequate remedy for irreparable injury; and this without inquiry as to whether a misdemeanor has been or is about to be committed.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. § 147; Dec. Dig. § 77.*]

Action by the Fairmont Athletic Club of Greater New York against Theodore S. Bingham, individually and as Commissioner of Police of the City of New York, and others. Injunction pendente lite granted.

Maurice Deiches, for plaintiff.

Francis K. Pendleton and Louis H. Hahlos, for defendants.

SEABURY, J. This is an application for an injunction pendente lite. The plaintiff is a corporation duly organized under the membership corporation law of this state. The defendants are all members of the police department of the city of New York, and this action is brought against them in their individual and official capacity. The plaintiff maintains clubrooms at Nos. 251–253 East 137th street, in the borough of the Bronx. These rooms are kept open daily and are used by its members for general athletic purposes. Since its incorporation the plaintiff has given weekly entertainments at which sparring exhibitions take place. The plaintiff claims that only actual members of the club are permitted to be present at these exhibitions. The defendants dispute this, and claim that an admission fee is charged at these sparring exhibitions, in violation of section 458 of the Penal Code. The plaintiff is a lawful organization, which is not required by law to secure a license. It has considerable property and a large membership. The defendants have threatened to prevent the giving of sparring exhibitions at the clubrooms of the plaintiff and assert the right to enter the plaintiff's premises and to remain therein in order to see to it that no sparring exhibition shall take place.

The evidence in this case shows that the defendant Post, who is a captain of police, entered the plaintiff's premises with a squad of six policemen while a business meeting of the plaintiff was being held, and refused to leave or to withdraw his men when requested so to do by officers of the plaintiff. At the time of this trespass no sparring exhibition was being given. The defendants threaten to repeat this trespass whenever in their judgment they think it necessary. The position of the defendants, briefly stated, is that it is their duty "to nip mischief in the bud," and that to this end they may without warrant enter with force the premises of the plaintiff and remain therein as long as they deem necessary to ascertain whether or not acts which they deem misdemeanors are being committed or are likely to be committed. The question is presented whether the police have the right to forcibly enter without a warrant a private club on suspicion that a misdemeanor is being committed or may be committed. The mere asking of this question shows that it must be answered in the negative. The duty of police officers, like all other public servants, is fixed and defined by law, and when they act contrary to this duty they become wrongdoers and violators of law. It is an essential characteristic of

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

free government that every official is himself subject to the law, and that none are above it. At common law and under the statute law of this state a police officer has no right to arrest without warrant in cases of misdemeanor when the crime was not committed or attempted in his presence. 3 Cyc. 880; Code Cr. Proc. § 177. This rule has been declared by the courts so often that it seems incredible that even the police can fail to comprehend it. In the very recent case of Stearns v. Titus (N. Y.) 85 N. E. 1077, the Court of Appeals, speaking through Chief Judge Cullen, redeclared it in terms that leave no room for doubt. In that case the court said:

"To justify an arrest without a warrant for the commission of that offense (misdemeanor), the crime must be actually committed or attempt be made to commit it in the presence of the officer. Reasonable suspicion or probable cause to believe its commission is not sufficient. Even in the case of a felony, to justify an arrest without a warrant it is necessary to establish that a felony has in fact been committed."

If a police officer cannot without a warrant make an arrest for a misdemeanor unless it was committed or attempted to be committed in his presence, it follows a fortiori that he cannot break into private premises without a warrant to arrest for an alleged misdemeanor not committed or attempted in his presence. Police officers have no right to enter without a warrant upon private property, such as dwellings or clubhouses, because they suspect that misdemeanors are or may be committed therein, and section 315 of the Greater New York Charter (Laws 1901, p. 136, c. 466) has been held to give them no such right. People v. Summers, 40 Misc. Rep. 384, 387, 82 N. Y. Supp. 297. The law prescribes the action which may be taken by the police in order to prevent the commission of a crime that is threatened. Code Cr. Proc. §§ 84–99. The fact that the police suspect that a misdemeanor is being committed or may be committed gives them no right to enter a private dwelling or club to ascertain whether their suspicions are well founded. The police possess no such right of search. It would be difficult to imagine a more odious form of oppression than this so-called right to search private premises to ascertain whether crimes are being committed. In Huckle v. Money, 2 Wilson's Reports, 205, 207, Lord Camden declared that:

"To invade a man's house by virtue of a nameless warrant in order to procure evidence is worse than the Spanish inquisition; a law under which no Englishman would wish to live an hour. It was a most daring public attack made upon the liberty of the subject."

The act of the police in entering the clubrooms of the plaintiff is without justification, unless they can point to the law which sanctions it. If there is no such law, and none has been or can be cited, then, as Lord Camden said, "the silence of the books is an authority against the defendant." Entick v. Carrington and Three Other King's Messengers, 19 Howell's State Trials, 1029, 1066. At common law the king had no right to enter without warrant the house of his humblest subject on the mere suspicion that the subject had committed or was about to commit a crime. Entick v. Carrington and Three Other King's Messengers, supra. The Governor of this state, in whom the

chief executive power of the people is vested by the Constitution, has no such right. It seems, however, that in the opinion of these defendants the limitations which restrain the actions of kings and Governors are but ropes of sand to a New York policeman. They seem to imagine that because they are police officials they are free from all constitutional restraint and have a commission which entitles them to rove at will into the private houses, clubs, or places of business of citizens. It cannot be too often reiterated that they have no such right. The act of the defendant Post in forcibly entering the clubrooms of the plaintiff with a squad of policemen and without a warrant was an act in defiance of the law.

There can be no question as to the illegal character of the acts committed by these defendants, and that they threaten to do again what they have done in the past. The question about which there is dispute is whether the court can restrain these threatened acts by injunction. It has been argued that Delaney v. Flood, 183 N. Y. 323, 76 N. E. 209, 2 L. R. A. (N. S.) 678, 111 Am. St. Rep. 759, denies this right to a court of equity. I do not so read the decision in that case, nor is that the interpretation which has been placed upon it by the courts, as will be seen by an examination of the cases cited below. The plaintiff in that case conducted a so-called "Raines Law Hotel," and in connection therewith maintained a saloon wherein liquors were sold under a liquor tax certificate duly issued to him. The decision seems to have been based upon the language of the statute, which specifically authorized police officers to enter upon such premises. In the case now under consideration an injunction is necessary to prevent irreparable injury to the plaintiff. Neither an action for damages nor a criminal prosecution of the defendants would afford the plaintiff adequate relief. It would be quite impossible to estimate in an action at law the damages to a social club like the plaintiff by reason of it being forced to disband because of police oppression. Nor would a criminal prosecution of the defendants for the crime of oppression (Pen. Code, § 556) protect the property rights of the plaintiff which are threatened with destruction by these defendants. I do not assent to the proposition that in the face of such threatened irreparable injury the plaintiff should be turned out of a court of equity. The right and duty of a court of equity to restrain police officers from committing a continuous trespass which threatens irreparable injury to the private property of a plaintiff has been distinctly asserted and declared in the following cases: Hale v. Burns, 101 App. Div. 101, 91 N. Y. Supp. 929; McGorie v. McAdoo, 113 App. Div. 271, 99 N. Y. Supp. 47; Burns v. McAdoo, 113 App. Div. 165, 99 N. Y. Supp. 51; Levy v. Bingham, 113 App. Div. 424, 99 N. Y. Supp. 258; Hagan v. McAdoo, 113 App. Div. 506, 99 N. Y. Supp. 255; and Olms v. Bingham, 116 App. Div. 804, 101 N. Y. Supp. 1106.

In Olms v. Bingham, supra, the Appellate Division of the Second Department said:

"That the police will be restrained by injunction from committing a continuing illegal trespass has been decided by this court and by the Appellate Division in the First Judicial Department so often that there should be no need to reiterate it."

Expressions contained in one of the opinions in Stevens v. McAdoo, 112 App. Div. 458, 98 N. Y. Supp. 553, do, indeed, seem to sanction the view that the mere claim of the police that the plaintiff is committing a crime makes it impossible for a court of equity to interfere by injunction.. But this view was not the opinion of the majority of the court, nor was it sanctioned by the later cases decided by the same court, which are cited above. It would be a strange doctrine to assert that equity is ousted of jurisdiction simply because the defendants whose acts are sought to be restrained claim that the plaintiff is committing a crime. The defendants cannot place themselves outside of the jurisdiction of equity upon the plea that they are enforcing the criminal law, when in fact they are engaged in breaking it. For the purposes of this motion it is not necessary to determine whether or not the plaintiff has committed or is about to commit a misdemeanor. The fact which must be conceded is that the defendants are proceeding in a manner contrary to law, and in such a way as to inflict irreparable injury upon the plaintiff. Nor can the recent "Sunday cases" (Eden Musee Co. v. Bingham, 125 App. Div. 780, 110 N. Y. Supp. 210; Shepard v. Bingham, 125 App. Div. 787, 110 N. Y. Supp. 217; Olympic Athletic Club v. Bingham, 125 App. Div. 793, 110 N. Y. Supp. 216) be invoked against the plaintiff's right to an injunction in this case. The decisions in those cases were based upon the fact that no trespass was threatened, and that the act sought to be restrained was the making of an arrest in a lawful manner. The only case which seems to declare a contrary doctrine is Suesskind v. Bingham, 125 App. Div. 787, 793, 110 N. Y. Supp. 213; but it can hardly be assumed that the decision in that case overruled McGorie v. McAdoo, supra, and the other well-considered cases to the same effect.

In the case at bar no arrest was made. The plaintiff does not ask an injunction which will restrain the police from making an arrest in a lawful manner. The acts which are sought to be restrained in this case are the acts of the police in forcing their way into the clubrooms of the plaintiff whenever they see fit to do so and remaining as long as they like. When an arrest is made, a citizen is at least reasonably sure of a speedy hearing, and if there is no evidence against him he will be discharged. Against the acts of the police in forcing their way into its clubrooms and acting in a threatening manner the plaintiff is remediless, if a court of equity turns a deaf ear to its plea. I am satisfied that an injunction should issue against the defendants; but it should be so limited as not to restrain them from making arrests in any lawful manner. The court will restrain the defendants from entering without warrant the clubrooms of the plaintiff to make arrests for alleged misdemeanors not committed or attempted to be committed in their presence.