Argued March 18, reversed and remanded April 15, rehearing
denied June 3, 1924.

# SLOVANIAN LITERARY AND SOCIAL ASSOCIA-
# TION v. CITY OF PORTLAND, GEORGE L.
# BAKER AND L. V. JENKINS ET AL.

(224 Pac. 1098.)

**Pleading—After Decree Complaint not Demurred to Construed
Favorably for Plaintiff.**

1. After decree a complaint which was not attacked by de-
murrer, necessitating strict construction, will be construed as favor-
ably for plaintiff as its language will permit.

**Clubs—Conduct of Amusements Subject to Police Regulation and
Supervision.**

2. The police power includes regulations and supervision of
amusements and places of amusement, because of their tendency
to become harmful; so that it does not follow that because the
objects of a club, the furnishing of amusements for its members
and a place therefor, are lawful, its conduct in so doing is beyond
the police power.

**Equity—Equity Looks to Intent Rather Than Form.**

3. It is a maxim of equity that equity looks to the intent
rather than to the form.

**Equity — Plaintiff Electing to Submit Complaint to Equity Gov-
erned by its Rules.**

4. Plaintiff electing to submit its complaint to a court of equity
will be governed by the rules of equity.

**Constitutional Law—No Impairment of Obligation of Contract by
Ordinance Requiring Incorporated Club to Obtain License.**

5. An ordinance requiring a license for a social club does not
impair the obligation of any contract arising from the club hav-
ing been incorporated, as the state cannot bargain away its police
power.

**Municipal Corporations—Ordinance Held not Invalid as Granting
Arbitrary Authority to License.**

6. Portland social club license ordinance *held* not invalid as
granting arbitrary authority to the council and administrative
officers to grant or refuse license, there being no authority to
discriminate between applicants qualifying under the terms of
the ordinance.

**Municipal Corporations—License Ordinance not Invalid Because Granting to Administrative Officers and Council Judicial Discretion to Investigate Facts.**

7. An ordinance is not invalid because granting to administrative officers and the council judicial discretion to investigate and pass on the facts necessary to be determined under the ordinance to either grant or refuse a license to a social club.

**Pleading—Demurrer Admits Allegations of Pleading.**

8. Allegations of an answer are admitted by demurrer thereto, and must be taken as true.

**Equity—Plaintiff Held not to Come into Court With Clean Hands.**

9. An incorporated social club asking injunction against interference by city officials because it has not obtained license required by ordinance does not come into court with clean hands, as is necessary for relief in equity, it admitting by demurrer to the answer that it is not a *bona fide* club, but was organized by its manager for conducting the identical business for which he individually was denied a license because of his there engaging in bootlegging.

**Constitutional Law—Delegation of Local Police Power to City Legal.**

10. The conferring by charter on a city of the police power within its limits is a lawful delegation of the power.

**Municipal Corporations—Police Power Presumed Lawfully Exercised.**

11. It will not be presumed that a city or its officers will unlawfully exercise its delegated police power.

**Injunction—Provision of Ordinance for Inspection of Clubs may not be Attacked in Advance of Any Act.**

12. Provision of an ordinance providing for police inspection of social clubs required to obtain licenses may not in an injunction action be complained of in advance of any act of inspection because of what might be done under it.

**Searches and Seizures—Reasonableness of Inspection of Clubs Under License Ordinance Largely Dependent on Manner and Purposes.**

13. Whether police inspection of social clubs, authorized by ordinance requiring them to obtain licenses, be unreasonable, and therefore invalid, will depend largely on the manner in which it is conducted and the purposes to be accomplished.

---

7. Validity of statute or ordinance vesting discretion in public officials without prescribing a rule of action, see note in 24 A. L. R. 1435.

12. Injunction against surveillance of business or amusement place by policeman, see note in 5 Ann. Cas. 483.

See 11 C. J., p. 925; 12 C. J., pp. 911, 1038; 21 C. J., pp. 172 (1925 Anno.), 191, 204; 32 C. J., p. 43; 28 Cyc., pp 372, 395, 693, 695, 696; 31 Cyc., pp. 82, 333; 35 Cyc., p. 1272 (1925 Anno.).

Municipal Corporations—Part of Ordinance may Stand Though Other Part be Invalid.

14. Even if section of social club license ordinance providing for police inspection should be held invalid it would not necessarily follow that the remaining portions would be invalid.

From Multnomah: George Tazwell, Judge.

Department 1.

This suit was instituted for the purpose of enjoining the defendants from in any wise or manner interfering with the plaintiff enjoying its charter and franchise, from interfering with any of its members so doing, and also to enjoin the defendants from arresting or causing to be arrested the manager of said corporation, or any of its officers or members from conducting or visiting the club maintained by them in the City of Portland. The complaint, omitting the title and the prayer, is as follows:

"I.

"Plaintiff is a corporation duly licensed by the state of Oregon, having been granted a charter, by this state for the purpose, among other things, to promote the physical and mental capacity of its members, and to advance the civic and intellectual welfare of the Slovanian population of the city of Portland, state of Oregon.

"To provide for the delivery and holding of lectures, exhibitions, public meetings, classes and conferences calculated directly or indirectly

"To advance the cause of education of its members, and for the Americanization of its members.

"To establish and maintain libraries and also reading and writing rooms and a reference library, and to furnish the same respectively with books, reviews, magazines, newspapers and other publications.

"To provide amusement, entertainment and instructions for its members, including the providing

111 Or.—22

of paraphernalia and apparatus therefor; to provide club conveniences, accommodation, and privileges for its members.

## "II.

"Pursuant to said charter, the said corporation is now, and for some time has been conducting a certain club-room situated at 50 North 3rd Street, Portland, Oregon, to enable it to carry out the objects and purposes of said articles of incorporation for the benefit of its members.

## "III.

"During all times herein mentioned, Marko Pivac was and now is manager of plaintiff corporation and its said club-rooms, and Frank Bakisch is its president, and Matt Vladich is its secretary-treasurer, and continually confining its activities and pursuits to the purposes of its articles of incorporation, and its charter, the said plaintiff has been wrongfully and unlawfully prevented from so doing by the actions and conduct of the defendants, in this, that heretofore, to-wit, on the 30th day of June, 1923, and again on July 2, 1923, its said manager Marko Pivac was arrested by the defendants, for so doing and said defendants are now threatening to continually arrest and re-arrest the said Marko Pivac and to prevent the members of said corporation and club from enjoying its privileges, unless restrained by this court from so doing.

"The defendant, L. V. Jenkins, is chief of police of the city of Portland and George L. Baker. is its mayor, and said defendants are now wrongfully and unlawfully threatening to prevent the said corporation and its members from enjoying the privileges of said club, and will prevent them from so doing unless restrained by this court. Whereby an irreparable injury will ensue to plaintiff corporation and all of its members, for that plaintiff and its said members have no redress of the wrongs herein complained of, and no plain, speedy or adequate remedy at law, but only in equity.

"V.

"That the primary cause of defendants' interfer-ence and the primary cause of said arrest is the failure on the part of this corporation to obtain a license to conduct its said club, and plaintiff alleges that plaintiff has a legal right to conduct said club without a license so to do, and there is no provision in the statutes of this state, or ordinance of the city of Portland, requiring plaintiff to obtain a license so to do."

The defendants filed their answer denying upon information paragraph 1. Admits that the plaintiff has been conducting a clubroom at 50 North Third Street, Portland, Oregon, and denies each and every other allegation contained in paragraph 2. Admits that Marko Pivac was and now is manager of said "pretended club," that he was arrested twice as alleged in said complaint, and denies each and every other allegation contained in paragraph 3. Admits the official capacity of the defendants Jenkins and Baker, and denies the other allegations in paragraph 4. Admits that the cause of the arrest of Marko Pivac was that said "pretended club" had no city license, and denies each of the other allegations in paragraph 5 of the complaint.

For a further and separate answer and defense the defendants allege the corporation of the City of Portland and the capacity of the defendants Baker and Jenkins, and then makes the following allegations:

"That on or about the 24th day of March, 1922, one Marko Pivac, being one and the same person as the Marko Pivac mentioned in plaintiff's complaint, established at 50 North Third Street the business of selling fruit, tobacco, soft drinks and other commodities to the general public, and at the same place established a pool room for the use of the

general public, and that the said Marko Pivac continued to operate said business and said pool room under a license from the city of Portland until about January 10, 1923, at which time his license to conduct said business and said pool room was revoked by the council of the city of Portland on account of said Marko Pivac having permitted said premises at 50 North Third Street to become a common nuisance and a place where intoxicating liquor was sold and to which numerous persons resorted for the purpose of drinking intoxicating liquor.

"That subsequent to the said 10th day of January, 1923, to-wit: on or about the 11th day of January, 1923, the said Marko Pivac filed a suit in the circuit court of Multnomah County, Oregon, to restrain these defendants from interfering with the operation of said business and said pool room at said 50 North Third Street, alleging said license revocation to be invalid, and a temporary injunction was issued by said circuit court for Multnomah County, Oregon, which remained in force and effect until the 30th day of April, 1923, at which time said suit was voluntarily dismissed by the said Marko Pivac.

"That on or about the 17th day of January, 1923, while said 50 North Third Street was being operated by the said Marko Pivac by virtue of said temporary restraining order, one George L. Burch, a special police officer in the employ of the city of Portland, entered said premises and purchased therein moonshine whiskey; that again on January 19, 1923, said officer entered said premises and purchased a pint bottle of moonshine whiskey; that again on January 20, 1923, the said George L. Burch entered said premises and purchased a pint of moonshine whiskey, said purchases having been made with marked money; that based upon said purchases, employees of said Marko Pivac were arrested and afterward pleaded guilty in the federal court to selling intoxicating liquor in said premises, and that subsequent thereto, to-wit, on or about April 30, 1923, the said Marko Pivac dismissed said suit in the circuit court for Multnomah County, and pretended to close said

premises to the public; that thereafter the said Marko Pivac and others organized said pretended club and proceeded to carry on said business at said 50 North Third Street.

"That said club is not a *bona fide* organization nor is the same a *bona fide* private club, but was organized as aforesaid by the said Marko Pivac for the purpose of evading the laws of the state of Oregon and of the city of Portland, and for the purpose of carrying on without a license the identical business for which the said Marko Pivac was refused a license by the council of the city of Portland, and for the purpose of continuing said illegal operations.

"That on the 16th day of May, 1923, the council of the city of Portland passed ordinance No. 42,883 entitled, 'An ordinance amending ordinance No. 40,468 by adding thereto an article to be known as Article XLVI½ relating to social clubs and amending section 16 of article III of said ordinance No. 40,468 and declaring an emergency,' which said ordinance was approved by the mayor on the same day, and that said ordinance provided that before any person, association, or corporation, or his, their or its employees, may maintain, operate, or conduct a social club in the city of Portland, such person, association, or corporation, must first obtain a license from the Bureau of Licenses of the city of Portland on application approved by the council; that said ordinance further provides that in case any other business is carried on in connection with such club which business is regularly licensed under the ordinances of the city of Portland, such business shall be also subject to the regulations and fees provided by ordinance.

"That neither the plaintiff, nor the said Marko Pivac, or any other person, has applied for or obtained a license from the city of Portland to operate said club or to carry on and conduct any other business in connection therewith.

"That the plaintiff is not acting in good faith herein and is not in this court of equity with clean

hands, but this suit is brought, and said injunction is sought, for the purpose of hindering and obstructing the defendants in the enforcement of the prohibition laws of the city of Portland and of the state of Oregon, and for the purpose of evading the license ordinance of said city of Portland.''

The plaintiff filed a demurrer to the further and separate answer in the following language:

''And now comes the plaintiff by its attorney, Charles J. Zerzan, and demurs to the further and separate answer of defendants interposed herein, upon the ground and for the reason that the matters and things therein set forth do not constitute a defense to the allegations of the complaint.''

The court sustained the demurrer to the answer and, the defendants refusing to plead further, the court entered a decree as prayed for in the complaint. The decree in part is as follows:

''And defendants' attorney having stated in open court that defendants would refuse to plead further, and consenting that a decree be entered upon plaintiff's complaint and defendants' answer.

''Now therefore, on motion of plaintiff's attorneys, it is by the court ordered, adjudged and decreed, That said ordinance be and the same is hereby adjudged to be invalid and void, for that, said ordinance is arbitrary and unreasonable, and fails to establish or contain any definite rule of action, but on the contrary, vests entirely within the discretion of the city council of the city of Portland, the arbitrary power and authority, uncontrolled by any prescribed rule of action to effectively decide who may and who may not engage in and carry on the manifestly lawful business of conducting a social club within the city of Portland, and said ordinance arbitrarily and unreasonably vests in said city council the power and authority to grant or to withhold licenses to conduct social clubs for social purposes and is therefore invalid and void.''

The defendants appeal to this court alleging as error the sustaining of plaintiff's demurrer to the further and separate answer, and granting the relief prayed for in plaintiff's complaint.

The ordinance under which the arrests were made and held to be invalid by the decree of the court is as follows:

"Section 1. Definition. A social club within the meaning and application of this article shall mean and include every incorporation or association (voluntary, co-operative or otherwise), of persons organized, wholly or partly, for the social and/or physical welfare, benefit or amusement of the membership, maintaining a club room or rooms to which the membership may resort for recreation or amusement; provided, however, that this article shall not apply to any club maintained in connection with any church or religious organization or association.

"Section 2. License. It shall be unlawful for any person, association, or corporation, or his, their or its employees, to maintain, operate or conduct a social club in the city of Portland without a license first being obtained from the bureau of licenses, on application approved by the council.

"Section 3. Application. Any person, association or corporation desiring a license to conduct a social club shall make application therefor to the bureau of licenses on forms to be provided, which application shall state the name of the club, the date of its organization, its address or proposed location, the names and addresses of all persons interested in the ownership thereof, if privately owned, or the names and addresses of all officers and trustees if the property is held for the entire membership, the purpose for which such club is organized, and such other and further pertinent information as the inspector of licenses or the council may require.

"On receipt of such application the inspector of licenses shall at once refer the same to the chief of police for investigation. The chief of police shall

investigate the facts stated in said application and within ten days shall return said application to the bureau of licenses showing the police record, if any, of the location, and of the individuals, officers or trustees named in said application, together with his recommendation. The inspector of licenses shall thereupon transmit such application together with the report and recommendation of the chief of police to the council for hearing and shall forthwith notify the applicant of the time and place of such hearing. At such hearing if the council shall determine from such application and the report of the chief of police, or otherwise, that such club is a *bona fide* social club, and organized and conducted for a lawful purpose, and that the persons interested in the ownership thereof and the officers and trustees thereof are law-abiding persons and persons who will operate and conduct such club in a lawful manner, such application shall be approved and such license shall be granted, otherwise it shall be denied.

"Section 4. Police Inspection. The club rooms of all social clubs licensed under this article shall be at all times, when open to its membership, subject to police inspection, and it shall be unlawful for any person to hinder or obstruct any authorized police officer in making such inspections.

"Section 5. Revocation. All licenses issued hereunder shall be subject to the regulations imposed by the city and nothing in this ordinance contained shall be construed to create any vested right in any person, association, or incorporation, to the assignment, renewal, reissuance or continuance of any license, and the right shall be and remain at all times vested in the council, and the council may, as hereinafter provided, revoke and cancel any license for fraud or misrepresentation in its procurement, or for a violation of any of the provisions of this ordinance, or of any other ordinance of the city, or any state or federal statute relating to gambling or the sale of intoxicating liquors, committed or permitted on the premises by the licensee, his, their or its officers or employees, or by any member of the club, or any other conduct

or act of the licensee, his, their or its officers or members, or permitted by them, tending to render such premises a common nuisance or a menace to the health, peace, morals or general welfare of the city, or whenever in the judgment of the council the public interest demands such revocation.

"Whenever the council desires to investigate or revoke any license it shall notify or cause to be notified, in writing, the licensee of the time and place of the hearing or investigation. Such hearing or investigation shall be informal. Nothing shall operate to prevent the council from considering any evidence developed during the hearing or investigation touching or concerning the fitness of such licensee to retain his license. If on such hearing or investigation the council finds that sufficient cause exists for the revocation of such license, the same may be revoked by a majority vote of the council on motion entered in the minutes.

"Section 6. License Fee. Every social club shall pay to the city of Portland an annual license fee of $5.00, and no license shall be granted for a shorter period than one year. In case any other business is carried on in connection with such club which business is regularly licensed under the ordinances of the city of Portland, such business shall be also subject to the regulations and fees provided by ordinance.

"Section 2. That Section 16 of Article LII of said ordinance No. 40,468 be and the same is hereby amended by adding thereto in proper alphabetical order the following: Social Clubs . . Annually $5.00.

"Section 3. Inasmuch as this ordinance is necessary for the immediate preservation of the public health, peace and safety of the city of Portland in this: That in certain social clubs existing in the city of Portland gambling and other violations of law are permitted to exist in defiance of the laws of the United States, state and city, and that such clubs have become a menace to the peace of the city and require immediate regulation, therefore an emergency is hereby declared to exist and this ordinance

shall be in force and effect from and after its passage by the council.''

The problems submitted for solution in this appeal may, for convenience, be embodied in the following questions:

1. Does the complaint state facts sufficient to constitute a cause of suit? This is raised in this court for the first time.

2. Is the plaintiff engaged in a lawful business not inherently harmful to the safety, health and morals of the public so as to be outside of the police power of the state?

3. Does the ordinance impair the obligations of the contract entered into between the plaintiff and state at the time of plaintiff's incorporation?

4. Is the ordinance invalid in that it authorizes an arbitrary exercise of the police power in this, that it fails to set forth any standard or rule of action for determining whether or not a license shall issue?

5. Is the ordinance invalid because authorizing police inspection?

REVERSED AND REMANDED.    REHEARING DENIED.

For appellants there was a brief and oral arguments by *Mr. Frank S. Grant,* City Attorney, and *Mr. R. A. Imlay,* Deputy City Attorney.

For respondent there was a brief over the names of *Mr. Irving Rand, Mr. John Kaste* and *Mr. Charles J. Zerzan,* with an oral argument by *Mr. Rand.*

COSHOW, J.—1. The complaint ·is probably demurrable. The defendants, however, answered and the cause was tried in the Circuit Court upon a demurrer to the answer. The defendants having submitted themselves to the jurisdiction of equity and

the suit having been determined upon the issues joined voluntarily by the parties, we deem it more satisfactory to determine the appeal upon the same issues. Upon a demurrer the complaint would have been construed strictly. After the decree, it will be construed as favorably to the plaintiff as its language will permit: 1 Pom. Eq. Juris., §§ 129, 130 (4 ed.).

2. One of the objects of the plaintiff corporation is described as follows:

"To provide amusement, entertainment and instructions for its members, including the providing of paraphernalia and apparatus therefor; to provide club conveniences, accommodation, and privileges for its members."

The objects thus expressed in the articles of incorporation of the plaintiff are not unlawful. They may not be only harmless, but also beneficial. At the same time, because of the tendency to become harmful, the police power of the state has always included regulations and supervision of amusements and places of amusements. It does not follow, therefore, because the objects of the plaintiff corporation are lawful within themselves, that the conduct of the plaintiff in providing amusements and maintaining places for its members to enjoy amusements is beyond the police power of the state.

The character of a social club depends not upon its objects, as expressed in its articles of incorporation, so much as it depends upon the character, conduct and disposition of its members. An incorporated club in itself has no character, conduct or disposition. Whether a club is a proper association of persons united together for the purpose of healthful and

lawful purposes depends therefore more largely upon its membership than upon anything else.

"It may fairly be presumed that the members of all *bona fide* social clubs are what the members of the appellee club are shown to be, and what many of them are personally known to the members of this court to be, viz., gentlemen of high moral standing, who would not intentionally violate any penal law of the state. But in this, as in most instances of *malum prohibitum*, the question is, was the forbidden act intentionally done? and not with what intent was it done." *State* v. *Country Club* (Tex. Civ.), 173 S. W. 570, 576. See also *Commonwealth* v. *Pomphret*, 137 Mass. 564, 567 (50 Am. Rep. 340).

A material inquiry in the suit before us is the personnel of the officers and members of the plaintiff corporation, and whether it is a club in good faith is a question for future inquiry.

"One inquiry always is whether the organization is *bona fide* a club with limited membership, into which admission cannot be obtained by any person at his pleasure, and in which the property is actually owned in common, with the mutual rights and obligations which belong to such common ownership, under the constitution and rules of the club, or whether either the form of a club has been adopted for other purposes, with the intention and understanding that the mutual rights and obligations of the members shall not be such as the organization purports to create, or a mere name has been assumed without any real organization behind it." *Commonwealth* v. *Pomphret*, 137 Mass. 564, 567 (50 Am. Rep. 340).

3. One of the maxims of equity is: "Equity looks to the intent rather than to the form."

4. The plaintiff having elected to submit its complaint to a court of equity, it will be governed by the rules of equity.

"The principle involved in this maxim, which is one of great practical importance, pervades and affects to a greater or less degree the entire system of equity jurisprudence, and is inseparably connected with that which forms the subject of the preceding section. In fact, it is only by looking at the intent rather than at the form, that equity is able to treat that as done which in good conscience ought to be done." 1 Pomeroy's Equity Jurisprudence (4 ed.), § 378.

The personal element is always an important one to be considered in licensing or regulating certain callings, occupations, amusements and sports under the police power of the state: *Gundling* v. *Chicago,* 177 U. S. 183 (44 L. Ed. 725, 20 Sup. Ct. Rep. 633, see, also, Rose's U. S. Notes); *Hall* v. *Geiger-Jones Co.,* 242 U. S. 539 (Ann. Cas. 1917C, 643, L. R. A. 1917F, 514, 61 L. Ed. 480, 37 Sup. Ct. Rep. 217); *Riley* v. *Chambers,* 181 Cal. 589 (185 Pac. 855, 8 A. L. R. 418); *Town of Sumner* v. *Ward* (Wash.), 217 Pac. 502; *State ex rel. Minces* v. *Schoenig,* 72 Minn. 528 (75 N. W. 711); *State* v. *Cohen,* 73 N. H. 543 (63 Atl. 928).

5. The ordinance does not impair the obligation of any contract. The state could not, if it would, bargain away its police power. The police power is the very essence of the sovereignty of the state. The famous case of *Trustees of Dartmouth College* v. *Woodward,* 4 Wheat. (U. S.) 518 (4 L. Ed. 629, see, also, Rose's U. S. Notes), does not enunciate any such doctrine as contended for by plaintiff in this suit. In that case the State of New Hampshire undertook to take property from the trustees of Dartmouth College, incorporated while that state was a colony subject to the king of Great Britain and Ireland, and vest that property in others. This is

clearly shown by the masterful argument of Webster in page 572:

· "That all property, of which the use may be beneficial to the public, belongs, therefore, to the public, is quite a new doctrine. It has no precedent, and is ·supported by no known principle. Dr. Wheelock might have answered his purposes, in this case, by executing a private deed of trust. He might have conveyed his property to trustees, for precisely such uses as are described in this charter. Indeed, it appears, that he had contemplated the establishment of his school in that manner, and had made his will, and devised the property to the same persons who were afterwards appointed trustees in the charter. * * In such a case, no lawyer would or could say, that the legislature might divest the trustees, constituted by deed or will, seize upon the property, and give it to other persons, for other purposes. And does the granting of a charter, which is only done to perpetuate the trust in a more convenient manner, make any difference? Does or can this change the nature of the charity, and turn it into a public, political corporation?"

Mr. Chief Justice MARSHALL, on page 636, said:

"From the fact, then, that a charter of incorporation has been granted, nothing can be inferred, which changes the character of the institution, or transfers to the government any new power over it. The character of civil institutions does not grow out of their incorporation, but out of the manner in which they are formed, and the objects for which they are created. The right to change them is not founded on their being incorporated, but on their being the instruments of government, created for its purposes. The same institutions, created for the same objects, though not incorporated, would be public institutions, and, of course, be controllable by the legislature. The incorporating act neither gives nor prevents this control. Neither, in reason, can the incorporat-

ing act change the character of a private eleemosynary institution."

So, the plaintiff in this suit stands in no favored position by reason of having been incorporated. Its members are entitled to the same protection, have the same liabilities and are subject to the same control as they would be if they were not incorporated. No property is sought to be taken from them by the defendants, nor is their franchise as a corporation molested. No attempt is alleged to have been made or threatened to interfere with the corporate affairs of the plaintiff other than by arresting the proper officers for not procuring a license. This does not bring the plaintiff within the principles enunciated in the Dartmouth College case.

6. The principal contention of the plaintiff is that the ordinance is invalid because it authorizes arbitrary authority on the part of the council and the administrative officers of the city to their granting or refusing a license. The cases principally relied upon by the plaintiff are *State ex rel. Makris* v. *Superior Court,* 113 Wash. 296 (193 Pac. 845, 12 A. L. R. 1428), and *Seattle* v. *Gibson,* 96 Wash. 425 (185 Pac. 109). It is not questioned by the defendants that if the ordinance vests in the council and the administrative officers of the city arbitrary discretion to their granting or refusing a license the ordinance is invalid. The cases relied upon by the plaintiff are distinguished in the later case of *Town of Sumner* v. *Ward* (Wash.), 217 Pac. 502. In the last-named case on page 504, the court said:

"In support of his second contention, the appellant cites and relies upon the cases of *Seattle* v. *Gibson,* 96 Wash. 425 (165 Pac. 109); *State ex rel. Makris* v. *Superior Court,* 113 Wash. 296 (193 Pac. 845, 12 A. L. R. 1428), and *Vincent* v. *Seattle,* 115 Wash. 475

(197 Pac. 618). But an examination of the several ordinances in question in these cases will show that they differ in a material respect from the ordinance here in question. In each of them the question whether a license should be granted to an applicant was left to some person or body of persons who had power either to grant or refuse it as he or they so willed, regardless of any other consideration. But it is not so with the present ordinance. Here the person having authority to issue the license (the town clerk) must do so unless he has good reason to believe that the applicant is dishonest or immoral and desires the license to enable him to practice some dishonest or immoral act. The ordinance thus does not grant to the clerk arbitrary power to grant or refuse the license at his discretion. He is bound to grant the license to every applicant, unless he finds him disqualified for the reasons stated in the ordinance. The fact of fitness is submitted to the judgment of the officer and it calls for the exercise of a discretion of a judicial nature, and the action of the officer may be reviewed in the courts for an arbitrary exercise."

The opinion then cites many other cases. The language last above quoted is very pertinent to the instant suit. An examination of the ordinance, assailed by the plaintiff, discloses that an application for a license must be made in writing. The application is then referred to the inspector of licenses, who must then refer the same to the chief of police for investigation. The chief of police then is required to investigate the *facts* stated in said application and within ten days return said application to the bureau of licenses showing the police record, if any, of the location, and of the individuals, officers or trustees named in said application, together with his recommendation.

"The inspector of licenses shall thereupon transmit such application together with the report and

recommendation of the chief of police to the council for hearing and shall forthwith notify the applicant of the time and place of such hearing. At such hearing, if the council shall determine from such application and the report of the chief of police, or otherwise, that such club is a *bona fide* club, and organized and conducted for a lawful purpose, and that the persons interested in the ownership thereof and the officers and trustees thereof are law abiding persons and persons who will operate and conduct such club in a lawful manner, such application shall be approved and such license shall be granted, otherwise it shall be denied.''

We have attempted to show hereinabove, by respectable authority, that places of amusement may be regulated under the police power of the state. The personnel conducting and operating such a place is of primary importance. The mere fact that the plaintiff is a social club does not exempt it from proper police regulations. The question, whether or not the applicant is a law-abiding person, is a question of fact to be determined after investigation. The question, whether the club is a social club organized in good faith for innocent and lawful purposes, is a question of fact to be determined upon investigation. There are other elements of fact stated in the ordinance which are to be determined by the properly appointed authorities. The discretion required to be exercised in the ordinance is a judicial discretion and not an arbitrary discretion. After an investigation and determination of the facts, and after a hearing upon notice to the applicant, the council has no discretion in the matter, but must issue the license or refuse to issue the license according to the determination upon the facts ascertained. The council is not authorized to discriminate between applicants who

111 Or.—23

qualify under the terms of the ordinance. The case of *Yick Wo* v. *Hopkins,* 118 U. S. 356 (30 L. Ed. 220, 6 Sup. Ct. Rep. 1064, see, also, Rose's U. S. Notes), is not in point. In that case the question was not so much whether the ordinance itself was invalid as it was the administration of the ordinance. This case has been cited and distinguished in this state in a number of cases: See *Thielke* v. *Albee,* 79 Or. 48 (153 Pac. 793); *Portland* v. *Traynor,* 94 Or. 418, 424 (183 Pac. 933, 186 Pac. 54, 6 A. L. R. 1410). See, also, *Goytino* v. *McAleer,* 4 Cal. App. 655 (88 Pac. 991), and *Gundling* v. *Chicago,* cited above.

7. Neither is the ordinance invalid because it grants to administrative officers and the council judicial discretion to investigate and pass upon the facts necessary to be determined under the ordinance to either grant or refuse a license: *White* v. *Mears,* 44 Or. 215 (74 Pac. 931); *Portland* v. *Traynor,* 94 Or. 418 (183 Pac. 933, 186 Pac. 54, 6 A. L. R. 1410); *Lieberman* v. *Van De Carr,* 199 U. S. 552 (50 L. Ed. 305, 26 Sup. Ct. Rep. 144, see, also, Rose's U. S. Notes); *Hall* v. *Geiger-Jones Co.,* 242 U. S. 539 (61 L. Ed. 480, 37 Sup. Ct. Rep. 217); 2 Dillon, Municipal Corporations (5 ed.), 934, 940, § 598; *Yew Bow* v. *Cleveland,* 99 Ohio St. 269 (124 N. E. 132, 12 A. L. R. 1424); *Mutual Film Corp.* v. *Industrial Com. of Ohio,* 236 U. S. 230 (Ann. Cas. 1916C, 296, 59 L. Ed. 552, 35 Sup. Ct. Rep. 387, see, also, Rose's U. S. Notes).

8, 9. It is alleged in the answer that Marko Pivac, the manager of the plaintiff corporation, prior to the incorporation of the plaintiff, conducted at the place now claimed as the home of the plaintiff corporation, to wit, 50 North Third Street,

"the business of selling fruit, tobacco, soft drinks and other commodities to the general public, and at the same place established a pool room for the use of the general public, and that the said Marko Pivac continued to operate said business and said pool room under a license from the city of Portland until about January 10, 1923, at which time his license to conduct said business and said pool room was revoked by the council of the city of Portland on account of said Marko Pivac having permitted said premises at 50 North Third Street to become a common nuisance and a place where intoxicating liquor was sold and to which numerous persons resorted for the purpose of drinking intoxicating liquor. * *

"That on or about the 17th day of January, 1923, while said 50 North Third Street was being operated by the said Marko Pivac by virtue of said temporary restraining order, one George L. Burch, a special police officer in the employ of the city of Portland, entered said premises and purchased therein moonshine whiskey; that again on January 19, 1923, said officer entered said premises and purchased a pint bottle of moonshine whiskey; that again on January 20, 1923, the said George L. Burch entered said premises and purchased a pint of moonshine whiskey, said purchases having been made with marked money; that based upon said purchases, employees of said Marko Pivac were arrested and afterward pleaded guilty in the federal court to selling intoxicating liquor in said premises, and that subsequent thereto, to wit, on or about April 30, 1923, the said Marko Pivac dismissed said suit in the circuit court for Multnomah County, and pretended to close said premises to the public; that thereafter the said Marko Pivac and others organized said pretended club and proceeded to carry on said business at said 50 North Third Street.

"That said club is not a *bona fide* organization nor is the same a *bona fide* private club, but was organized as aforesaid by the said Marko Pivac for the purpose of evading the laws of the state of Oregon and of the city of Portland, and for the purpose of

carrying on without a license the identical business for which the said Marko Pivac was refused a license by the council of the city of Portland, and for the purpose of continuing said illegal operations."

These allegations are admitted by the demurrer of the plaintiff and must be taken as true. Does the plaintiff come into court with clean hands? It would be very difficult to imagine any fouler business than that of bootlegging. If there is anything that more deeply and viciously stains the hands of a litigant than bootlegging under the laws of the land, we do not know what it is. Equity will never lend its aid to protect business conducted either singularly or collectively, whether incorporated or not, from the legal consequences of their criminal acts. "He who comes into equity, must come with clean hands, is an equitable maxim of universal application." 1 Pomeroy's Equity Jurisprudence (4 ed.), §§ 397, 402 and 404. From page 738, we quote as follows:

"It says that whenever a party, who, as *actor,* seeks to set the judicial machinery in motion and obtain some remedy, has violated conscience, or good faith, or other equitable principle, in his prior conduct, then the doors of the court will be shut against him *in limine;* the court will refuse to interfere on his behalf, to acknowledge his right, or to award him any remedy."

In matters of this kind Marko Pivac, the manager of the plaintiff corporation, represents that corporation. It is of no avail for him to say that he is not the actor or party plaintiff. The plaintiff corporation can act only through its officers and agents. The members will not be allowed to hide behind the organization to violate the laws of the land and to conduct a nefarious and injurious business.

''The public authorities have no right to interfere with the festivities of a private club organized for a legitimate purpose and conducted in a manner not amounting to a nuisance or breach of the peace.'' 11 C. J. 925, § 10; *Cer Francais de L'Harmonie* v. *French,* 44 Hun (N. Y.), 123; *Fairmont Athletic Club* v. *Bingham,* 61 Misc. Rep. 419 (113 N. Y. Supp. 905).

10, 11. The prohibition of unlawful search and seizure was vigorously enforced by the courts of the common law of England and that prohibition is incorporated in the federal Constitution and in the Constitution of the state. It will be vigorously enforced by the courts on all proper occasions. It does not follow, however, that citizens or other persons within the boundaries of the state would be allowed to organize a club for the purpose of violating the laws of the land. The police power of the state has been conferred upon the City of Portland within the corporate limits of that city. Section 34 of the charter of the City of Portland in effect July 1, 1913. This is a lawful delegation of police power: 28 Cyc. 693. It will not be presumed that the city or its officers will unlawfully exercise that power: 2 Dillon on Municipal Corporations (5 ed.), § 598. The famous case of *Yic Wo* v. *Hopkins,* 118 U. S. 356 (30 L. Ed. 220, 6 Sup. Ct. Rep. 1064, see, also, Rose's U. S. Notes), is ample assurance that the courts will protect the plaintiff against an abuse of that power in the administration of the ordinance attacked.

12, 13. The plaintiff is not in a situation to attack the section of the ordinance providing for police inspection. No act of inspection under the ordinance is complained of by the plaintiff. The argument attacking that part of the ordinance is predicated exclusively upon what might be done. The illustrations used by the plaintiff show that at least the ordinance

is not discriminating against the plaintiff but will include all other clubs organized for a similar purpose. The evil which the ordinance was designed to combat is concrete and not theoretical. It must be interpreted in that light: *People* v. *Milone,* 119 Misc. Rep. 22 (195 N. Y. Supp. 488). From page 489 (195 N. Y. Supp.) of the last cited case we take the following language:

"The defendant ran a licensed pool parlor. * * As to whether or not the search was unreasonable, within the meaning of the statute, depends upon the circumstances, and is not influenced by the fact that it was without warrant. A search without warrant may be reasonable and a search with warrant may be unreasonable. * * The evil which our enactment was designed to combat was, therefore, concrete rather than theoretical. The statute must be interpreted in that light. It must not be permitted to afford a haven of protection for crime, by embarrassing legitimate functioning of the police power. The danger in stating in theory a remedy for a concrete condition is that the theory is apt to run wild and outstrip the sound purpose which gave it life. The welfare and protection of law-abiding people should be neither sacrificed nor impaired by maudlin construction of a statute, designed to benefit rather than to work against the best interests of organized society. It has always been permissible for police officers, in performance of their official function, to follow criminals into their hiding places, and to search the latter for evidence to support conviction. As to whether such search and seizure are unreasonable, or should be under warrant, depends upon the circumstances."

As to whether or not the inspection authorized by the ordinance is unreasonable and therefore invalid will depend more largely upon the manner in which it shall be conducted and the purposes to be accomplished. In the instant case that question is a mooted one and we do not care to theorize or speculate upon

it. "Sufficient unto the day is the evil thereof." Matthew vi:34.

14. Respectable authority has upheld similar ordinances providing for police inspection: *Salt Lake City* v. *Wight,* 60 Utah, 108 (205 Pac. 900); *People* v. *Milone,* 119 Misc. Rep. 22 (195 N. Y. Supp. 488); *Commonwealth* v. *Carter,* 132 Mass. 12; *State* v. *Armeno,* 29 R. I. 431 (72 Atl. 216). Even if the section of the ordinance providing for police inspection when properly presented should be held to be invalid, it does not follow that the remaining provisions of the ordinance would be invalid: 19 R. C. L. 816; *Parker* v. *Hood River,* 81 Or. 707 (160 Pac. 1158); *Barton* v. *Recorder's Court of Vale,* 60 Or. 273 (119 Pac. 349). It follows, therefore, from these considerations that the decree of the Circuit Court must be reversed and this suit be remanded for further proceedings consistent with this opinion.

REVERSED AND REMANDED.    REHEARING DENIED.

McBRIDE, C. J., and BEAN and McCOURT, JJ., concur.

---

'Argued April 5, affirmed June 17, 1924.