Submitted on briefs January 29; reversed March 24, 1931

FENWICK *v.* CITY OF KLAMATH FALLS ET AL.
(297 P. 838)

*A. W. Schaupp*, City Attorney, of Klamath Falls, for appellants.

*Fred H. Mills*, of Klamath Falls, for respondent.

CAMPBELL, J. The plaintiff is engaged in the motor carrier business in Klamath Falls, Oregon, operating as an "anywhere for hire carrier": Oregon Code 1930, § 55-1307, class 2. That is, in transporting passengers from points within to points without, from points without to points within, and from point to point within the city of Klamath Falls. He has complied with all the general laws and the rules and regulations of the Public Service Commission of the state of Oregon. The defendant, through its duly constituted officers, has passed an ordinance known as number 2044 for the regulation of this class of business. Plaintiff claims that defendant intends to and will enforce said ordinance. That the enforcement of said ordinance will contravene the fourth and fifth amendments to the United States constitution, and section 20, article 1 of the constitution of Oregon. That the enforcement of the ordinance will greatly damage and injure him in his business and property rights. He asks that the defendant be restrained from the enforcement thereof, and that the ordinance be declared void.

To his complaint a demurrer was filed on the ground that it did not state facts sufficient to constitute a cause of suit against defendants or either of them. The demurrer was overruled by the court, whereupon defendants refused to plead further, and an order was duly entered permanently restraining the city from enforcing said ordinance and declaring said ordinance No. 2044 void. From this judgment this appeal is taken.

The defendant assigns as error the action of the court as follows: "1. The order overruling defendant's demurrer to plaintiff's complaint. 2. The order of the court granting the plaintiff a permanent injunc-

tion against said ordinance and the enforcement thereof. 3. The ruling of the court holding that said ordinance No. 2044 is void."

The particular sections of the ordinance complained of are as follows:

"Section 3. No vehicle or vehicles used for the transportation of passengers for hire on the streets of the City of Klamath Falls, shall park, wait for passengers, or stand for hire, on any street, unless the owner or owners thereof shall have secured a permit from the common council of the city of Klamath Falls, authorizing the owner thereof to stand such vehicle for hire on such street or streets.

"Section 4. The owner or proprietor, lessor, or lessee, of every motor vehicle, operated in the City of Klamath Falls, and/or used for transporting passengers for hire, whether by contract, wages, or otherwise, shall pay a yearly fee of twenty-five dollars ($25.00) for the first car and ten dollars ($10.00) for each additional car.

"Section 5. The owner of such vehicle desiring a permit, shall make a vertified, written application therefor to the common council, and such application shall contain the name and address of the owner of the vehicle or vehicles to be used for such purposes, the factory number, the state license number, and trade name of such vehicle or vehicles, an accurate description of the particular place in the streets or street, together with the name of the streets or street, where, and the hours of the day, during which the owner desires to stand such vehicle or vehicles for hire, and the name and address of the person or persons who will drive or be in charge of such vehicle. The chairman of the street committee shall examine into and investigate the traffic conditions surrounding the place upon which the owner desires to stand such vehicle, and report to the council his recommendations as to whether or not a permit shall be issued to such applicant.

"If upon consideration of the report of said chairman, and a view, if necessary, of the place where the owner of such vehicle desires to stand the same, the council is of the opinion that the standing of such vehicle at the place and during the time stated in the application will interfere with traffic, or the proper regulation thereof, then such permit shall not be granted.

"If, however, the council is of the opinion that the standing of such vehicle at the place and during the time mentioned, will not interfere with traffic, and the proper regulation thereof, then such permit shall be granted. The permit shall contain the name and address of the owner of the vehicle, the factory number, state license number, and trade name of such vehicle, the name and address of the person or persons who will drive or be in charge of such vehicles, and an accurate description of the particular place in the street or streets, together with the name of the street or streets where, and the hour of the day during which such vehicle shall be permitted to stand for hire or wait for passengers. Provided further, that no vehicle belonging to a person, firm, or corporation, shall at any time be permitted to park, stand for hire, or wait for passengers within the same block wherein another vehicle, belonging to the same person, firm or corporation, is standing for hire or waiting for passengers.

"It shall be unlawful for the owner or driver of any vehicle, licensed by the City of Klamath Falls, either as a taxicab, or for-hire car, to park the same upon any street, except the stands covered by permits as above provided, unless such vehicle is under hire at the time of such parking. A violation of any provision of this section shall be sufficient grounds for the revocation by the council of any permit issued hereunder.

"All permits issued under the provisions of this ordinance, shall expire on the 31st day of December of each year, and must be renewed for the following year.

"The chief of police shall have the authority to temporarily revoke a permit issued to any owner or

chauffeur or driver of any taxicab or for-hire motor vehicle, when he has reasonable ground to believe that the chauffeur or driver is an incompetent and/or improper person to operate a motor vehicle and the owner, chauffeur, or driver, having his permit temporarily revoked by the chief of police may appeal within five (5) days from the date of said revocation to the common council, from such order.

"Whenever the chief of police temporarily revokes the permit of any chauffeur or driver, he shall report such fact with a statement of his reasons therefor to the council. Whenever the council authorizes taxicabs or for-hire vehicles to be placed at any certain stand in the city, the chief of police shall have the right to regulate the motor vehicles as to the matter of alternating on the stands, subject to general parking rules and regulations.

"Section 7. Upon filing an application for a permit or license under the provision of this ordinance, the owner, proprietor, or lessor of such motor vehicle, shall file with his application an insurance policy issued by some reliable insurance company, authorized to transact business in the state of Oregon, in the following amounts, to wit: Property damage, $1,000.00. Public liability not less than $5,000.00 for one person and not less than $10,000.00 for two or more persons, which insurance must be issued and applied to the car for which application is being made;

"That said permit to so operate such motor vehicle shall expire of itself or terminate upon the cancellation of said insurance, and no permit shall be granted or be effective unless the automobile for which said permit is requested has been fully covered with insurance as heretofore specified.

"Section 8. Any person or persons, who shall be convicted for violating the provisions of this ordinance, shall be fined by the police judge in a sum not exceeding one hundred dollars ($100.00), or 50 days in jail, or by both such fine and imprisonment."

Plaintiff contends that the city of Klamath Falls does not have power to add any burden or restriction or to designate a parking place nor parking places for automobiles for hire, that it would place on all motor vehicles, and that plaintiff operating under his Public Service Commission license has the right to park his cars on any street and for the same length of time that any car not engaged in the same class of business has a right to park or stand.

■ The charter of the city of Klamath Falls, adopted March 10, 1913, in subdivision 59, section 87, gives the city the right:

"To regulate and control for any and every purpose, the use of streets, highways, alleys, sidewalks, public thoroughfares, public places and parks of the city; to regulate the use of streets, roads, highways and public places for foot passengers, animals, bicycles, automobiles and vehicles of every description."

This right is confirmed as limited by the general laws of the state of Oregon:

"* * * Provided, cities and towns may enact and enforce reasonable regulatory ordinances, including the imposing of regulatory licenses not destructive of the general purpose of this act": Oregon Code 1930, § 55-1304.

The extent of the power thus granted and confirmed has frequently been before the courts and the decisions of this court are uniform in upholding such power: *Cummings v. Jones,* 79 Or. 276 (155 P. 171); *Dent v. Oregon City,* 106 Or. 122 (211 P. 909).

■ There is just one question presented. Can the court say from a perusal of the ordinance, that its provisions are arbitrary, confiscatory, or discriminatory? Where the city has a right to regulate a business, it has also the inherent right to charge against that business a

reasonable sum for such regulations. This court cannot say as a matter of law that the license fees exacted under this ordinance are excessive, nor does the plaintiff complain that such fees are excessive, his only complaint being that he is being doubly taxed.

He also complains that section 7 of the ordinance requires him to carry public liability insurance for each car, of $5,000 to $10,000, in addition to the liability insurance furnished under the requirement of the Public Service Commission. Also an additional property damage insurance of $1,000. Section 7 of the ordinance does not so provide, and even if it did, it would not be an unreasonable provision for the city council to exact in order to properly protect the public, who use such cars, against the negligence of the operators. There are many cases brought before this court for injuries arising out of the operation of automobiles where the verdicts are greatly in excess of the amount of bond required by the ordinance.

Section 5 of the ordinance provides a method by which parking stands may be established for this class of business. Anyone desiring to engage in the business may apply to the council for a parking stand. The chairman of the street committee shall make a survey of the traffic conditions surrounding the proposed stand, and shall submit his report upon such application to the council. If the council is of the opinion, from such investigation, that establishing a parking stand on the place requested will interfere with the proper regulation of traffic, then a permit shall not be granted. If, however, the council is of the opinion, that the parking of such vehicles at the place requested, and during the time mentioned in said application will not interfere with traffic and the proper regulation thereof, then such permit shall be granted. These pro-

visions in themselves are not arbitrary or discriminatory, and operate alike upon all persons in the same class. The granting of the license is not an arbitrary power under the ordinance. The license can only be refused when it interferes with the proper regulation of traffic. This section does not prevent the plaintiff from loading or unloading at any point on the street, but prevents him from parking at any other place than the stand specified except when the car is actually under hire. This section further gives the chief of police authority to temporarily revoke a permit issued to any owner or chauffeur or driver of "for-hire motor vehicles" when he has reasonable ground to believe that such person is incompetent or improper to operate a motor vehicle. This is not an arbitrary power. The person whose permit is revoked has the right to appeal from said revocation to the common council of the city.

■ The court will presume, until the contrary is shown, that the administrative body, to which the power is delegated, will act with reasonable regard to property rights: *Portland v. Traynor,* 94 Or. 418 (183 P. 933, 186 P. 54, 6 A. L. R. 1410):

"An ordinance is not invalid because granting to administrative officers and the council judicial discretion to investigate and pass on the facts necessary to be determined under the ordinance to either grant or refuse a license to a social club": *Slovanian, etc., v. Portland et al.,* 111 Or. 335 (224 P. 1098), and cases therein cited.

■ Plaintiff also complains of section 8 of the ordinance fixing the penalty that may be imposed as being contrary to the general law, Oregon Code 1930, § 56-401. This section of the code only applies to cities organized under that particular act and does not apply to a city organized under its own special charter.

■ Ordinance No. 2044 is a valid exercise of the police powers of the state delegated to the city of Klamath Falls. It does not infringe any of plaintiff's constitutional rights.

The demurrer to plaintiff's complaint is sustained. The decree and judgment of the lower court is set aside, the injunction dissolved and a decree entered declaring the ordinance No. 2044 of the city of Klamath Falls is in all respects valid.